## STRANGE et al. v. COOPER GROCERY CO.
### (No. 599.)

Court of Civil Appeals of Texas. Waco.
Feb. 16, 1928.

Rehearing Denied March 22, 1928.

1. **Reformation of instruments** ⬅️45(16)—Evidence held to support finding of jury that defendants did not know they signed guaranty for debts incurred thereafter. ·

In action on notes alleged to have been secured by written guaranty of defendants, evidence *held* to support finding of jury that defendants in signing a guaranty for one note of $10,000 did not know they signed a guaranty of notes for · debts of their principal incurred thereafter.

2. **Reformation of instruments** ⬅️45(16)—Evidence held to· support finding that plaintiff's agent authorized defendant to represent to codefendant that guaranty required covered part of purchase price of grocery business only.

In action on notes given in part for purchase price of assets of grocery business and in part for debts incurred thereafter, secured by written guaranty of defendants, evidence *held* to support finding of jury that plaintiff's agent authorized one defendant to represent to his codefendant that sale of assets of grocery would be made if defendants executed a guaranty covering part of purchase price.

3. **Guaranty** ⬅️27—Guaranty limited as to existing debt and unlimited as to future debts created separate, distinct, and severable guaranties.

A guaranty of indebtedness created on date of guaranty and thereafter until notice was given in writing, which was limited as to the existing indebtedness and unlimited as to future indebtedness, created separate, distinct, and severable guaranties.

4. **Reformation of instruments** ⬅️46—Evidence held to raise issue whether unlimited guaranty of indebtedness was' embraced in written guaranty because of mutual mistake.

In action on notes alleged to have been secured by defendants' written guaranty of existing indebtedness of their principal not exceeding $10,000, and "any indebtedness created on this day or hereafter until notice in writing," evidence *held* to raise issue whether unlimited guaranty for debts created thereafter was included in written guaranty because of mutual mistake of both parties.

5. **Reformation of instruments** ⬅️46—Whether statement of plaintiff's agent at time guaranty was signed was fraudulent representation that instrument tendered conformed to verbal agreement held for jury.

Where in action on notes defendants alleged that their written guaranty was to cover note given for purchase of assets of grocery, but not for debts of grocery created thereafter, and that verbal agreement was made with plaintiff to that effect, but that written guaranty covered debts of their principal created thereafter, evidence *held* to raise issue whether statement of plaintiff's agent at time he filled in printed form and delivered it for signing amounted to fraudulent representation that instrument tendered conformed to verbal agreement.

6. **Appeal and error** ⬅️930(3)—Where issues were not submitted to jury, reviewing court must deem them as found by trial court so as to support judgment.

Where issues which under evidence should have been submitted to jury were not submitted to the jury, and no request to submit them was made, reviewing court is required to deem them as found by trial court in such manner as to support judgment rendered.

7. **Reformation of instruments** ⬅️19(2)—Mutual mistake may arise by erroneously omitting from writing provision actually agreed on, or including provision not agreed on.

A mutual mistake may arise after parties have verbally concluded their agreement in reducing it to writing by erroneously omitting provision actually agreed on, or including provision not agreed on.

8. **Reformation of instruments** ⬅️19(1)—Equity will grant relief against mistake of both parties in reducing agreement made to writing.

Against mistake of both parties by which, in effort to reduce agreement made to writing, they mistake its terms so that writing does not represent real contract, equity will grant relief.

9. **Reformation of instruments** ⬅️25—Mistake of one party through omission to read cannot ᐧ avail as defense to other party equally in fault against suit to correct mistake.

Failure of one to understand written agreement through omission to read or give sufficient attention to its contents cannot avail as defense to the other equally in fault against suit to correct mistake.

10. **Reformation of instruments** ⬅️21—Where party reducing agreement to writing, knowingly including provision not agreed on, represents writing correctly expresses agreement, equity will grant relief notwithstanding other's failure to read.

Where one party to verbal agreement undertakes to reduce it to writing, but knowingly includes material provision not agreed on, and represents to the other party that writing correctly expresses real agreement, and other party, relying thereon and believing it expresses agreement made, signs it, equity will grant relief and writing will be made to conform to real agreement, and failure of the other party ᐧ

---

⬅️For other cases, see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

to read the instrument, though having opportunity to do so, is no bar to relief.

**11. Reformation of instruments ⬤⟹47—In case of mutual mistake or misrepresentation on one side and mistake on the other, prior suit to reform instrument is unnecessary.**

Neither in cases of mutual mistake in execution of a written instrument, or misrepresentation on one side and mistake on the other, is prior suit to reform instrument required, but judgment in action on the instrument may be rendered in accordance with terms originally agreed on.

**12. Reformation of instruments ⬤⟹25—Negligence in signing written instrument to bar relief because of mistake must amount to violation of positive legal duty.**

For negligence of complaining party to bar relief, because of mistake in execution of a written instrument, it must amount to a violation of a positive legal duty.

**13. Reformation of instruments ⬤⟹46—Whether defendants were culpably negligent in signing guaranty without reading it held question of fact.**

Where defendants in action on notes alleged they orally agreed to guarantee a note for part of purchase of assets of a grocery concern, but that written guaranty thereafter executed covered all indebtedness incurred thereafter by the grocery, whether defendants were negligent in signing the guaranty without reading it *held* under evidence a question of fact.

**14. Appeal and error ⬤⟹930(3)—Negligence in not reading guaranty signed not being submitted, reviewing court in support of judgment must conclude defendants were not negligent.**

Where, in action on notes alleged to have been secured by unlimited written guaranty, issue whether defendants were negligent in signing guaranty without reading it was one of fact, and, not having been submitted to jury, reviewing court is required, in support of judgment rendered for defendants, to deem that trial court found that they were not negligent.

**15. Appeal and error ⬤⟹930(3)—Reviewing court in support of judgment is required to treat guaranty as covering one note only and payments as applicable to other notes sued on.**

In action on notes secured by a guaranty of defendants covering part of indebtedness of makers, where trial court would have been justified under facts in finding that parties treated the guaranty as covering one particular note, and that they understood that payments made by makers were being applied to discharge other notes, reviewing court is required to deem such issue so found to support judgment rendered.

**16. Appeal and error ⬤⟹930(1)—Reviewing court must consider facts on controverted issues in light most favorable to judgment.**

Reviewing court is required to consider facts on controverted issues in light most favorable to the judgment rendered.

**17. Guaranty ⬤⟹60—Generally, guarantor cannot control payment made by debtor and require it to be applied to debt guaranteed.**

Generally, where creditor has several debts or one debt consisting of different items, part of which only is guaranteed, guarantor cannot control payment made by debtor and require it to be applied to part covered by guaranty; especially when by agreement between debtor and creditor different application has been made.

**18. Guaranty ⬤⟹60—Defendants who guaranteed part of purchase price of grocery held liable on their guaranty until entire price was paid.**

Where assets of grocery concern were sold for $22,000, $10,000 of which defendants guaranteed, guarantors were liable until the entire purchase price was paid, whether mortgage given by purchasers secure the entire price or only $12,000 thereof.

**19. Guaranty ⬤⟹27—Guarantor may stand on strict terms of undertaking.**

A guarantor, like a surety, has a right to stand on the strict terms of his undertaking.

**20. Guaranty ⬤⟹53(1), 56—When creditor extends time of payment or accepts as substitute obligation of different description, guarantor is discharged unless he assents thereto.**

When creditor has extended time of payment of principal obligation or has accepted as substitute therefor obligation of different description or of materially different terms or with additional signers thereto, guarantor is discharged unless he has assented to change or ratified it.

**21. Novation ⬤⟹12—Evidence that debt guaranteed was renewed and extended by new and different note held circumstances to be considered on issue of novation on issue of guarantors' liability.**

Where defendants guaranteed payment of note for purchase price of assets of a grocery, evidence that debt guaranteed was renewed and extended by a new and different note *held* circumstances to consider on issue of novation as respects guarantors' liability, though written guaranty provided that signers consent to any extension of time of payment and waive notice thereof, and consent to change of form of indebtedness from account to note, bill, or other form of indebtedness.

**22. Novation ⬤⟹4—Novation is substitution of new obligation with intent to discharge old obligation.**

A novation is effected by substitution, concurred in by both debtor and creditor, of new obligation between same parties, with intent that old obligation for which it is substituted shall be discharged.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Novation.]

**23. Novation ⬤⟹7—Assent to acceptance of novation need not be shown by express words, but may be implied.**

It is not essential that assent to acceptance of terms of novation be shown by express words,

---

⬤⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

but same may be implied from facts, circumstances, and conduct.

**24. Novation ⬤⟳4—Novation results on agreement that original debt or note be surrendered and new or substituted note be accepted as payment.**

·If it is agreed between parties that original debt or note shall be surrendered and new or substituted note shall be accepted as payment thereof, novation results.

**25. Novation ⬤⟳3—Discharge of original debt is sufficient consideration for new obligation, but inference of novation is strengthened if there is new consideration.**

The discharge of the original debt is a sufficient consideration for the new obligation, but inference that a novation has taken place is strengthened when a new consideration enters into new contract.

**26. Novation ⬤⟳4—Renewal of indebtedness between parties and surrender of old notes for which new notes are substituted may constitute novation.**

While renewal of indebtedness between same parties and surrender of old notes for which new notes are substituted does not of itself necessarily constitute novation, such action in connection with attending circumstances may be sufficient to do so.

**27. Novation ⬤⟳13—Whether acceptance of new note signed by one guarantor only was novation of original note held under evidence for jury.**

, Where defendants guaranteed payment of a note given for purchase price of assets of a grocery, whether acceptance of a new note, including part of indebtedness which had not previously been guaranteed, and which was signed by only one of original guarantors, was novation for original note, *held* under evidence for jury.

Appeal from District Court, McLennan County; Giles P. Lester, Judge.

Action by the Cooper Grocery Company against M. D. Dugger and others. From a judgment for the plaintiff against defendants W. L. Dugger and G. R. Strange, they appeal. Reversed and remanded for further proceedings.

John McGlasson and W. L. Eason, both of Waco, for appellants.

Witt, Terrell & Witt and James P. Alexander, all of Waco, for appellee.

GALLAGHER, C. J. The Cooper Grocery Company, hereinafter styled plaintiff sued M. D. Dugger and M. D. Dugger, Jr., composing the firm of M. D. Dugger & Son, W. L. Dugger, and G. R. Strange, hereinafter styled defendants, to recover on nine promissory notes in the aggregate sum of $36,667.75. All said notes were payable to plaintiff and executed by defendants M. D. Dugger & Son as principals. One of said notes in the sum of $13,667.75 was also signed by defendant W. L.

Dugger. Plaintiff alleged that the payment of $10,000 of said note was secured by written guaranty signed by W. L. Dugger and said Strange, and that said guaranty also covered and secured the other eight notes sued on. M. D. Dugger & Son pleaded their discharge in bankruptcy. The pleadings of defendants Strange and W. L. Dugger were sufficient to raise the issues hereinafter considered.

The case was submitted to a jury on special issues. The findings of the jury in response thereto are, in substance, as follows:

(1) W. L. Dugger did not know before he delivered said guaranty contract to J. R. Milam that the same contained the clause, "and any indebtedness created on this day or hereafter."

(2) W. L. Dugger believed when he signed the contract of guaranty that same covered only $10,000 of the purchase price of the assets purchased.

(3) J. R. Milam authorized W. L. Dugger to represent to G. R. Strange that the Cooper Grocery Company would sell the assets of the Dugger Grocery Company to M. D. Dugger & Son if he, the said G. R. Strange, and said W. L. Dugger, would execute a guaranty covering $10,000 of the purchase price of said assets.

(4) W. L. Dugger did represent to G. R. Strange that the Cooper Grocery Company would sell the assets of the Dugger Grocery Company to M. D. Dugger & Son if he, the said G. R. Strange, and W. L. Dugger, would execute a guaranty covering $10,000 of the purchase price of said assets.

(5) G. R. Strange did not know that the contract of guaranty covered any indebtedness except $10,000 of the purchase price of said assets.

(6) G. R. Strange relied upon said representations in signing said contract of guaranty.

The court rendered judgment on the verdict of the jury in favor of plaintiff, Cooper Grocery Company, against defendants G. R. Strange and W. L. Dugger, jointly and severally, for the sum of $10,000 as part of said $13,667.75 note on their written guaranty, and against W. L. Dugger as surety on said note for the remainder due thereon, and that plaintiff take nothing against the firm of M. D. Dugger & Son or the individual members thereof on account of their discharge in bankruptcy.

#### Opinion.

[1] Plaintiff contends that the court erred in refusing at its request to charge the jury to return a verdict in its favor against the defendants Strange and W. L. Dugger for the amount of the eight notes aggregating $23,-000, upon which it was denied a recovery, and that the material findings of the jury on which such recovery was denied are without support in the evidence. There is very little conflict in the testimony with reference to the facts which led up to the execution and delivery of said guaranty. A corporation known as the Dugger Grocery Company, in

which all the Duggers had been interested, had become financially embarrassed and had made an assignment. The assignee, in due administration of his trust, sold the entire assets of said corporation, including its stock of goods, wares, and merchandise, its furniture and fixtures, and its notes and accounts, to plaintiff for the sum of $22,000. M. D. Dugger and his son, M. D. Dugger, Jr., desired to purchase all said assets and to continue the business under the firm name of M. D. Dugger & Son. Plaintiff desired to sell all said assets to some one who would continue the business. W. L. Dugger, a son of M. D. Dugger, Sr., and a brother of M. D. Dugger, Jr., conducted the negotiations between the parties. He, however, was not a member of the firm of M. D. Dugger & Son. Plaintiff proposed to sell the entire assets which it had bought from the assignee of the Dugger Grocery Company to M. D. Dugger & Son for the sum of $22,000. No money was to be paid. $10,000 of the purchase price was to be evidenced by a promissory note of the firm and secured by a guaranty signed by M. D. Dugger, W. L. Dugger, and G. R. Strange. According to some of the testimony, said entire purchase price was to be evidenced by promissory notes of the firm and secured by a mortgage on the furniture and fixtures and an assignment of the notes and accounts transferred to the firm as a part of such purchase, and, according to other testimony, only the remaining $12,000 thereof was to be so secured. W. L. Dugger, who is a son-in-law of defendant Strange, suggested that said Strange would aid the Duggers to get back into business. The amount which he would be willing to guarantee was discussed. It was finally agreed that Strange and W. L. Dugger and M. D. Dugger should sign a guaranty for a part of the purchase price and that their liability thereon should be limited to $10,-000. There is no contention that anything was said in any conversation leading up to the execution and delivery of the guaranty, or at the time of the execution or delivery thereof, with reference to either of said guarantors being bound for the payment of any indebtedness thereafter created by the firm for future purchases. Plaintiff's witnesses testified affirmatively that nothing of that kind was said. They did testify, however, that instead of saying "a guaranty," Mr. Milam said "one of our guaranties," and Mr. Milam further testified that W. L. Dugger had signed such a guaranty on one or more prior occasions, and that he thought the said Dugger understood that said form of guaranty, while limited as to past indebtedness, included future advances, and that he intended that indebtedness for such advances should be included in the guaranty sued on. On cross-examination this witness testified, in substance that he agreed to sell said assets to M. D. Dugger & Son for $22,000, to be se-

cured by chattel mortgage on the furniture and fixtures, an assignment of the notes and accounts, and the guaranty of $10,000 of the purchase price by W. L. Dugger and G. R. Strange, and that the deal was closed on that basis. W. L. Dugger testified that he did not read the guaranty under consideration and that while he had theretofore signed one or more guaranties to the plaintiff, he did not read them in detail, and that he did not know that they nor the guaranty sued on contained any provision making the signers thereof liable for future purchases. He further testified that when the terms of sale were agreed upon, Mr. Milam took a blank guaranty and said:

"I will fix this for $10,000. You get Mr. Strange to sign it and you sign it."

All the guaranty was printed except the date, the names of the purchasers, M. D. Dugger & Son, and the specific amount named therein. These blanks Mr. Milam filled with a pen, writing "ten thousand dollars" in the appropriate blank as the specific amount of the guaranty. Said guaranty, so far as material to the particular issues here under consideration, reads:

"I, we or either of us hereby guarantee to said the Cooper Grocery Company, its successors and assigns, unconditionally, the payment of any indebtedness of M. D. Dugger & Son now existing in favor of the said the Cooper Grocery Company of Waco, Texas, not exceeding the sum of $10,000.00, *and any indebtedness created on this day or hereafter until notice in writing by registered mail.*" (Italics ours.)

The construction of the language used by the parties at the time and the weight to be given to the testimony of the respective witnesses were matters for determination by the jury, and we cannot say that the first and second findings of the jury with reference to the understanding of W. L. Dugger in signing the guaranty sued on are without support in the evidence.

[2] Plaintiff, in the negotiations with reference to the sale of said assets and the execution and delivery of said guaranty, had no direct dealings with the defendant Strange. After the guaranty was signed by W. L. Dugger it was delivered to him to procure the signature of Strange thereto, in the forenoon. Mr. Strange was then in the country. About 7 o'clock that evening Mr. Milam called W. L. Dugger by phone and asked if Strange had returned and if he had signed said instrument. On being informed that Mr. Strange was in town but had not signed the same, Mr. Milam said to Dugger:

"It is very important that we get it fixed up to-night; suppose you run over and get Mr. Strange to sign it and bring it to the store and we will fix up the papers. You come by my house and get me."

He further stated in that connection that he understood some one was figuring on filing a petition in bankruptcy, and he wanted the sale to go over before a petition in bankruptcy was filed. Dugger went immediately to Mr. Strange's home and found him at the supper table. He presented the instrument to Mr. Strange and pointed out the "ten thousand dollars" written therein and said: "Here is the guaranty for ten thousand dollars." Dugger testified that he was in a hurry and hurried Mr. Strange a little with reference to his signing the instrument, and while he did nothing to prevent Mr. Strange from reading the same, he did tell him, "You are just signing for ten thousand dollars, Mr. Strange." Mr. Strange testified that when said instrument was presented to him at his supper table he did not have his glasses and could not read the type without them; that he noticed the words "ten thousand dollars" in ink and then signed the instrument; that Dugger told him that the guaranty so signed was for $10,000; that he believed and relied on said statement and signed the instrument without reading it; that he would not have signed the same if he had known it contained said clause with reference to future purchases. Dugger returned the guaranty to Mr. Milam at once, and the deal was closed according to agreement. The particular finding of the jury assailed by plaintiff in this connection is the third one above quoted, with reference to Dugger's authority from Mr. Milam to state to Mr. Strange the terms of the trade between plaintiff and M. D. Dugger & Son, the consummation of which was dependent upon his signing the guaranty tendered for his signature. The statement thereof made by Dugger to Strange as to the terms of the guaranty required as found by the jury does not differ materially from Mr. Milam's testimony on cross-examination, as hereinbefore recited. Both the testimony of said witness and the finding of the jury explicitly state that one of the conditions for the sale of said assets to Dugger & Son was the execution by said Strange and W. L. Dugger of a guaranty of $10,000 of the purchase price thereof. There is no testimony in the record that Mr. Milam told Dugger to make this specific statement to Mr. Strange. The testimony, however, does disclose that Mr. Milam, acting for plaintiff, was not only willing to sell the assets of the former corporation to M. D. Dugger & Son upon the terms agreed upon, but that he was anxious to do so and insistent that the deal should be closed at once; that he called Dugger about 7 o'clock at night and requested him to go and secure the signature of Mr. Strange to said guaranty and return the same to him at once. He necessarily understood, or ought to have understood, that Mr. Strange would want to know the terms of the trade that would be effected by his signing said instrument and the delivery of same to Dugger to be tendered to plaintiff and acted on by it. He ought to have reasonably anticipated that Dugger would make a statement of the terms of such trade and the nature of the guaranty required and he had a right to assume that such terms would be correctly stated. It seems from the finding of the jury that Dugger did state such terms as he understood them and in accordance with the testimony of Mr. Milam on cross-examination. Under the circumstances, we think that the jury had a right to infer and find as a fact that Mr. Milam contemplated that Dugger would make some such statement concerning the trade to be consummated as the result of the signing of said instrument by Strange, and that Dugger had implied authority from him to do so. We therefore hold that the finding of the jury so assailed is not without support in the evidence.

[3, 4] The guaranty under consideration is a limited one as to existing indebtedness and an unlimited one as to future indebtedness. Plaintiff in its fifth counter proposition construes these provisions to be separate, distinct, and severable. We agree with that construction. The evidence shows that the first provision with reference to a limited guaranty of existing indebtedness, was the only one mentioned or discussed and the one verbally agreed upon between the parties at the time. The evidence also shows that the second provision, with reference to an unlimited guaranty of future indebtedness arising from subsequent purchases, was not even mentioned by plaintiff's representative or any one else in the course of the negotiations. One contract of guaranty, in which liability was strictly limited, was discussed, agreed upon, and embodied in the written guaranty. Another and additional contract of guaranty, not discussed, in which liability was unlimited and which was therefore potentially far more onerous, was also embodied in the written guaranty tendered for signatures. The printed form was furnished and the blanks therein filled by plaintiff's representative. According to Dugger's testimony, plaintiff's representative said in that connection, "I will fix it for $10,000," which was in exact accord with the verbal agreement as testified by him, and that said representative handed it to him and requested him to sign it and secure the signature of Mr. Strange thereto. The jury found that Dugger did not know that this printed form contained the additional, separate, and more onerous guaranty of indebtedness created by future purchases. The defendants Strange and Dugger contend that said additional, separate, and more onerous provision was embraced in the guaranty signed by them by reason of a mutual mistake of both parties. Such contention is in effect, that the fact that the printed form used contained such a provision and did not therefore accurately express the guaranty

discussed and agreed upon was for the time being overlooked by the plaintiff's representative and unknown to Dugger. We think the evidence raised this issue and that Mr. Milam's testimony on this issue was not legally conclusive. Such testimony was given long after the transaction. In addition thereto, he was an executive officer of the plaintiff corporation and its representative in consummating the same. The accuracy of his recollection and the weight to be given to his testimony in view of the attending circumstances in evidence were for the determination of the court or jury passing on such issue. Dunlap v. Wright (Tex. Civ. App.) 280 S. W. 276, 279.

[5, 6] The defendants Strange and Dugger further contend that if said additional and more onerous guaranty was not embodied in the written instrument signed by them by reason of mutual mistake of both parties, that its presence there resulted from fraud, express or implied, on the part of plaintiff, and mistake on their part. We think the evidence raised an issue as to whether the statement made by Mr. Milam at the time he filled the blanks in the printed form and delivered the same to Dugger for signing, under and in connection with the attending circumstances, amounted to a representation, express or implied, that the instrument tendered conformed to the verbal agreement with respect thereto which had just been discussed. This issue, like the preceding, was one for the determination of the court or jury passing upon the same. Since neither of these issues was submitted to the jury and since there was no request for the submission of the same, we are required to deem them as found by the trial court in such manner as to support the judgment rendered. Plaintiff contends in this connection that defendants Strange and Dugger had an opportunity to read the guaranty before signing the same, and that each of them was negligent in not doing so, and that neither of them can therefore be heard to say that he was mistaken with reference to its contents. This contention will be discussed in connection with the authorities hereinafter cited on such issue.

[7-11] A mutual mistake may arise after the parties have verbally concluded their agreement in reducing that agreement to writing, by erroneously omitting some provision actually agreed upon or including some provision not agreed upon. 2 Pom. Eq. Juris. p. 1742, § 853. Against a mistake of both parties by reason of which, in the effort to reduce the agreement they have made to writing, they mistake its terms so that the writing does not represent the real contract, equity will grant relief. In such cases the failure of one to understand through omission to read or give sufficient attention to its contents cannot avail as a defense to the other equally in fault against a suit to correct such mistake. Kelley v.

Ward, 94 Tex. 289, 296, 297, 60 S. W. 311. Where one of the parties to a verbal agreement undertakes to reduce the same to writing, but knowingly includes therein some material provision not agreed upon and expressly or by necessary implication represents to the other party that such writing correctly expresses the real agreement, and such other party, relying on such representation and believing that the writing does correctly express the agreement actually made, signs the same, equity will grant relief, and the writing will be made, to conform to the real agreement. In such cases, as in the case of mutual mistake, a mere failure to read the instrument, though there was opportunity to do so, is no bar to appropriate relief. Conn v. Hagan, 93 Tex. 334, 338, 339, 55 S. W. 323; Kelley v. Ward, supra, p. 297 (60 S. W. 313), quoting with approval from the case of Albany City Savings Institution v. Burdick, 87 N. Y. 40; Chatham v. Jones, 69 Tex. 744, 749, 7 S. W. 600; Cooper Grocery Co. v. Rowntree (Tex. Civ. App.) 260 S. W. 333, 334; Strickel v. Brownfield State Bank (Tex. Civ. App.) 250 S. W. 258, 259; Granger v. Kishi (Tex. Civ. App.) 153 S. W. 1161, 1163; Compagnie Des Metaux Unital v. Victoria Mfg. Co. (Tex. Civ. App.) 107 S. W. 651, 652; Commercial Jewelry Co. v. Braczyk (Tex. Civ. App.) 277 S. W. 754, 756, and cases there cited. Neither in cases of mutual mistake, or misrepresentation on one side and mistake on the other, is a prior suit to reform the instrument required, but under our blended system of law and equity, a judgment may be rendered thereon in accordance with the terms originally agreed upon. Ætna Insurance Co. v. Brannon, 99 Tex. 391, 397, 398, 89 S. W. 1057, 2 L. R. A. (N. S.) 548, 13 Ann. Cas. 1020.

[12] The general rule with reference to whether negligence on the part of a party complaining will bar equitable relief from a mistake of fact is stated by Mr. Pomeroy in his work on Equitable Jurisprudence, vol. 2, p. 1748, part of section 856, as follows:

"It has sometimes been said in very general terms that a mistake resulting from a complaining party's own negligence will never be relieved. This proposition is not sustained by the authorities. It would be more accurate to say that where the mistake is wholly caused by the want of that care and diligence in the transaction which should be used by every person of reasonable prudence, and the absence of which would be a violation of legal duty, a court of equity will not interpose its relief; but even with this more guarded mode of statement, each instance of negligence must depend to a great extent upon its own circumstances. It is not every negligence that will stay the hand of a court. The conclusion from the best authorities seems to be that the neglect must amount to the violation of a positive legal duty."

[13, 14] Aside from the question of mutual mistake, or misrepresentation and mistake, whether Dugger and Strange, or either of

them, was under the terms of the rule just quoted guilty of culpable negligence in signing the guaranty under consideration without reading it, is, upon consideration of the evidence as a whole, a question of fact. There is evidence tending to excuse them from such a charge. The question of negligence on their part was not submitted to the jury, and we are required to deem such issue so found by the trial court as to sustain the judgment rendered. We are therefore of the opinion that the judgment of the court refusing plaintiff a recovery on the said guaranty for $23,-000 of indebtedness incurred for purchases subsequent thereto should be affirmed.

[15, 16] Defendants Dugger and Strange contend that the court erred in rendering judgment against them on said guaranty for $10,000, or any other sum. The basis of this contention is that since the purchase price of the assets of the Dugger Grocery Company bought by M. D. Dugger & Son from plaintiff was $22,000, and since said guaranty covered only $10,000 of such purchase price, and since the remainder thereof, amounting to $12,000, had been paid, the law requires such payment to be applied first to the discharge of said guaranty, and that the same has therefore been satisfied and that they are released from liability thereon. We will make a brief recital of the facts pertaining to this contention. In doing so we will follow the rule which requires us to consider the facts on controverted issues in the light most favorable to the judgment rendered by the trial court. The mortgage and assignment are not in the record, and there is some testimony tending to show that the same secured the whole of the purchase price of said assets; but Mr. Milam testified, in substance, that he told W. L. Dugger that plaintiff would sell said assets to said firm for $22,000, and would take a lien on the fixtures and a transfer of the notes and accounts as security for $12,-000 of such purchase price, and would require a guaranty signed by him and Strange for the remaining $10,000. Such mortgage, assignment of notes and accounts, and personal guaranty were all given as required. W. L. Dugger immediately entered the employ of M. D. Dugger & Son. According to Mr. Strange's testimony, W. L. Dugger represented him in a general way in all matters connected with this transaction. W. L. Dugger participated in closing the deal with plaintiff. The entire purchase price of $22,000 was evidenced by notes. $12,000 of this amount was represented by notes maturing from January 1 to April 1, 1924. The remaining $10,000 of such purchase price was evidenced by a single note for that amount, due January 1, 1925. The division of this indebtedness into separate notes as aforesaid was participated in by W. L. Dugger and approved by him. He continued in the employ of the firm until it went into bankruptcy and was at all times active in the management of its affairs. Said notes,

amounting in the aggregate to $12,000 and maturing in 1924, were paid off prior to February, 1925. At that time the $10,000 note was all of said purchase price that remained unpaid. It was renewed at that time and made payable October 1, 1925, and an additional sum of $3,667.75 included therein. There is no contention that this additional sum was covered by said guaranty. W. L. Dugger participated in this renewal transaction and signed said renewal note as surety. He was cognizant of the payments made by said firm and the application of the same to the full satisfaction and discharge of said notes evidencing said $12,000 of the purchase price, and it appears that he as a representative of the firm personally participated therein. We think under the circumstances that the trial court would have been justified in finding that all the parties, including the guarantors, represented by said W. L. Dugger, treated the guaranty as covering the $10,000 note, and understood that the payments made by the firm were being applied to discharge the other purchase-money notes, and either approved such application or at least acquiesced therein. Such being the case, we are required to deem such issue so found as to support the judgment rendered by the trial court.

[17] The facts of this case distinguish it from the cases cited and relied on by defendants. Regardless of assent of the guarantors to or their acquiescence in the application of the payments made by the firm to that part of the indebtedness secured by the mortgage on the fixtures and the assignment of notes and accounts, the general rule is that where the creditor has several debts, or one debt consisting of different items, part of which only is guaranteed, the guarantor cannot control a payment made by the debtor and require it to be applied to the part covered by his guaranty, especially when by agreement between the debtor and creditor a different application has been made. 28 C. J. p. 1005, § 166, and cases cited in support of the text. The case of Kortlander v. Elston (C. C. A.) 52 F. 180, 183, 184, involved a contract for the sale of certain real property by one Elston to one Carman for the sum of $12,000, payable in installments. Kortlander guaranteed the payment of the first $3,000 of the purchase price. Fire insurance policies covering the improvements on the property, together with some personal property therein contained, were assigned to Elston by Carman as additional security for the payments to be made under the terms of said contract. A fire occurred, and insurance to the amount of $4,-050 was collected and held by Elston. Carman, after having paid a very small sum on the contract price for said property, made default. Elston then sued Kortlander on his guaranty. Kortlander contended that the insurance money collected by Elston and held by him should be applied to the discharge of

the first payments due under said contract, and, since the same amounted to more than $3,000, the sum guaranteed by him, that he should be discharged from further liability on his guaranty. The trial court charged the jury that Elston had a right to hold the insurance money realized on the buildings as security for the payment of the whole debt, and that Kortlander had no right in law or equity to demand that the money be applied to the amount due under his guaranty. The opinion of the Circuit Court of Appeals was written by Chief Justice Taft, who was at that time one of the judges of that court. After expressly approving said charge, said opinion continues as follows:

"The primary equity growing out of the relation of creditor, debtor, and surety is that the creditor be paid what is due him; and he does not lose this equity as against the surety, except by misconduct to the latter's prejudice. When the creditor in the original contract has received collateral covering the entire debt, and a personal guaranty on part of it, the legal and the natural presumption, in the absence of circumstances showing the contrary, is that he has taken the personal guaranty as additional or cumulative protection for his debt. In order that his debt may be paid, therefore, he has the right to exhaust all his securities, and in doing so he may apply the collaterals to that part of the debt not covered by the personal guaranty, and hold the guarantor to the full measure of his contract. * * * In the case at bar, the guaranty and the collateral security were given concurrently, each with reference to the other, and no one can doubt the intention of the parties to the original contract, that the creditor should use and exhaust both, if necessary, to pay his whole debt. The authorities in support of our view are numerous. In Hanson v. Manley, 72 Iowa, 48, 33 N. W. 357, a chattel mortgage secured four notes. There was a surety upon the two notes first due. It was held that the proceeds of the mortgage might be applied by the creditor on the notes on which there was no surety. In Nichols v. Knowles (C. C. A.) 3 McCrary, 477, 17 F. 494, Judge McCrary decided that where a creditor held several notes secured by mortgage, one of which was also secured by the indorsement of a third party, it might be inferred, in the absence of evidence, that the parties intended to apply the proceeds of the sale of the mortgaged property first to the notes not otherwise secured, so as to give the creditor the full benefit of all his security. To the same effect are Mathews v. Switzler, 46 Mo. 301; Wood v. Callaghan, 61 Mich. 402, 28 N. W. 162 [1 Am. St. Rep. 597] (where English v. Carney [25 Mich. 183], supra, is distinguished); Gaston v. Barney, 11 Ohio St. 506; Stamford Bank v. Benedict, 15 Conn. 437; Field v. Holland, 6 Cranch, 8 [3 L. Ed. 136]; Western Transportation, etc., Co. v. Kilderhouse, 87 N. Y. 430; First Nat. Bank of Buffalo v. Wood, 71 N. Y. 405 [27 Am. Rep. 66]; Gordon v. Bank, 115 Mass. 591."

[18] The rule of law announced by that distinguished jurist and applied in the disposition of that case is applicable here, whether said mortgage and assignment were given to secure the whole purchase price of said assets or only $12,000 thereof. In either event, unless the guarantors have been otherwise discharged, plaintiff is entitled to hold them liable until the remainder of the original purchase price of said assets is paid. Hutches v. J. I. Case Threshing Mach. Co. (Tex. Civ. App.) 35 S. W. 60, 64 (writ refused); Borschow v. Stephenson (Tex. Civ. App.) 166 S. W. 121, 122; Rotan Grocery Co. v. Martin (Tex. Civ. App.) 57 S. W. 706–708; Henry v. Safford (Mo. App.) 241 S. W. 951, 953; Phillips v. Bossard (D. C.) 35 F. 99; Alexander v. United States (C. C. A.) 57 F. 828; Gile Grocery Co. v. Lachmund, 75 Or. 122, 146 P. 519.

In this connection, however, in view of another trial, we call attention to the fact that there is testimony tending to show that the fixtures included in the original purchase of said assets by the firm were mortgaged by them to secure the whole purchase price, and that the notes and accounts included in said assets were assigned to plaintiff as security therefor, and that the guarantors so understood at the time they signed the guaranty. The date of said assignment of the notes and accounts was on or about December 15, 1923. The evidence does not disclose what amount of money was collected out of the same or the application made thereof. The evidence shows that the firm of M. D. Dugger & Son filed a voluntary petition and were adjudged bankrupts thereon on the 31st day of December, 1926. The evidence further shows that the notes and accounts and fixtures belonging to said firm at that time were sold by their trustee in bankruptcy to plaintiff on the 1st day of February, 1927, and that said notes and accounts sold for the sum of $3,000 and said fixtures for the sum of $2,000. It is reasonable to suppose that the notes and accounts purchased by plaintiff at the bankrupt sale of the assets of said firm were other and different notes and accounts from those assigned to secure the original purchase price, and that the assignment under which plaintiff claimed and received from the bankrupt court the net proceeds of the sale thereof was executed and delivered long after said original purchase. There is nothing in the evidence, however, to indicate that there was any substantial change in the business fixtures included in the original purchase at the time said firm filed its petition in bankruptcy. Plaintiff claimed and received from the bankrupt court the net proceeds of the sale of said fixtures. The evidence does not disclose the amount of such net proceeds in either case. Mr. Milam testified that all they received on account of said sales was credited on an open account owed to plaintiff by said firm. There is, however, a credit indorsed on the $13,667.75 note for the sum of $3,343.-50. The source from which the funds so

credited were derived is not disclosed by the evidence. The court in rendering judgment applied this credit on that part of said note not covered by the guaranty. If said original assignment of notes and accounts and mortgage on the fixtures were to secure the entire $22,000 purchase price of said assets, then any of the proceeds of the same received by plaintiff from the bankrupt court should be applied in reduction of the amount remaining unpaid on said guaranty.

Defendants Strange and Dugger, as a defense to liability on the guaranty sued on, pleaded that after the indebtedness secured thereby had been reduced to $10,000 or less, such indebtedness was renewed and extended by a new and different note; that said note was not signed by defendant Strange; that the same was executed in full settlement, satisfaction, and novation of all indebtedness guaranteed by said Strange; and that plaintiff thereby waived any further liability on the part of said Strange and was precluded from asserting any further claim against him. The evidence discloses that at the time of the purchase of said assets by said firm plaintiff held an unsatisfied indebtedness against the Dugger Grocery Company amounting to something more than $5,200; that W. L. Dugger had guaranteed the payment of same; that either as a part of said transaction or in connection therewith, the firm of M. D. Dugger & Son and W. L. Dugger executed and delivered their promissory note therefor to plaintiff. According to plaintiff's contention and the testimony of its witnesses, this note was not given as a part of the purchase price of said assets and was not covered by said guaranty. On or about the 7th of February, 1925, said note was past due and a balance of $3,667.75 remained unpaid. The $10,000 note constituting the remainder of the purchase price of the assets was also unpaid and had been past due since January 1, 1925. Mr. Milam, acting for plaintiff, called W. L. Dugger, who seems to have been acting for the firm at the time, and told him that that was the end of their fiscal year and that they wanted to have a settlement and make arrangements for the ensuing year. He proposed that the $10,000 note and said balance of $3,667.75 should be combined in a renewal note for the aggregate of both said sums, and further proposed that, in addition to the signature of the firm thereto, W. L. Dugger and Mr. Strange should both sign the same. In connection with said proposition he prepared the $13,667.75 note sued on and tendered it for signature, stating that that was all they owed plaintiff at that time. W. L. Dugger replied that he would sign said note in addition to the signature of said firm, but declared that he would not ask Mr. Strange to sign it. He stated as a reason for such refusal that Mr. Strange was getting old and he did not want to bother him and did not want him to pay said note and that such note was perfectly good without his signature. He testified that he stated to Mr. Milam in this connection that plaintiff had carried the firm for $17,000 the year before and that it could certainly carry them for $13,000 then. He peremptorily refused to have M. D. Dugger, who had also signed the guaranty individually, to sign the same, and again refused to ask Mr. Strange to do so. After some insistence on the part of Mr. Milam and argument between them, Dugger still refused to ask Mr. Strange to sign said note, and declared that he would make arrangements to refinance the debt before he would ask Mr. Strange to do so. Dugger testified in this connection that he could and would have arranged to pay plaintiff's debt before he would have asked Mr. Strange to sign said note. According to his testimony, Mr. Milam then replied that he wanted the firm to continue to do business with them, and said:

"I'll tell you what I will do; I will take M. D. Dugger & Son's note with your indorsement and will mark these others 'Paid' and give them to you."

Said note was then signed by the firm and by W. L. Dugger as surety. Mr. Milam accepted the same, marked both the old notes "Paid," and delivered them to Dugger. No reference whatever was made to the guaranty sued on at any time during this controversy nor thereafter until the maturity of said note in the fall of 1925, at which time, owing to adverse business conditions, the firm of M. D. Dugger & Son had become considerably involved.

[19-21] The evidence above recited shows that the $13,667.75 note sued on and recovered on herein is other and different from any of the notes originally guaranteed. A guarantor, like a surety, has a right to stand on the strict terms of his undertaking. When the creditor has extended the time of payment of the principal obligation, or has accepted as a substitute therefor an obligation of a different description or of materially different terms or with additional signers thereto, the guarantor is discharged, unless it is shown that he assented to such change or ratified the same. 28 C. J. pp. 995, 996, part of section 155; Bank of Commerce v. Webster, 70 Okl. 68, 172 P. 942, 943, and authorities there cited; Harper v. Stroud, 41 Tex. 367, 372–373; Ford v. First Nat. Bank (Tex. Civ. App.) 34 S. W. 684, 686, 687; Chapman v. Morrison (Tex. Civ. App.) 282 S. W. 606, 607. In this case the plaintiff relies on the fact that the written guaranty introduced in evidence provides that the signers thereof consent to any extension of time of payment made or thereafter to be made and waive notice thereof, and consent that the form of indebtedness may be changed from account to note, bill, or any other form of indebtedness. We think the changes made by the execution and delivery of said $13,-667.75 note differed in some respects from the

terms stipulated in said guaranty, and that such differences are circumstances to be considered in determining the issue of novation hereinafter discussed.

[22-26] A novation is effected by the substitution of a new obligation between the same parties with the intent that the old obligation for which the same is substituted shall be discharged. Both debtor and creditor must concur in this intention. 29 Cyc. p. 1131; Meador v. Rudolph (Tex. Civ. App.) 218 S. W. 520, 526, and authorities there cited; Forreston Gin Co. v. Waxahachie Nat. Bank (Tex. Civ. App.) 271 S. W. 290, 292. It is not essential that assent to the acceptance of the terms of novation be shown by express words, but the same may be implied from the facts and circumstances and the conduct of the parties. 29 Cyc. p. 1132; Meador v. Rudolph, supra. If it is agreed between the parties that the original debt or note shall be surrendered and that the new or substituted note shall be accepted as payment thereof, a novation results. 20 R. C. L. p. 365, § 6. The discharge of the original debt is a sufficient consideration for the new obligation, but the inference that a novation has taken place is strengthened when a new consideration enters into the new contract. 29 Cyc. p. 1135. While the renewal of an indebtedness between the same parties and the surrender of the old notes for which the new notes are substituted, does not of itself necessarily constitute a novation, such action, considered in connection with attending circumstances, may be sufficient to do so.

[27] In this case not only was the time extended, but the guaranteed debt was combined with another not guaranteed; the new note was signed by W. L. Dugger, one of the guarantors, which made him a conventional surety thereon. Whether such action as to him substituted the relation of surety for the relation of guarantor or was in addition to such relation need not be determined. He at least assumed a new and different legal relation to the guaranteed indebtedness. The statements made by him at the time to the effect that the renewal note was less than the amount of the original purchase price which plaintiff had carried on the credit of the firm alone, the distinct refusal to ask Strange to sign the new note, the specific agreement to mark the old notes "Paid" and surrender the same, and the consummation of such agreement, and further, the fact that according to Dugger's testimony, if such agreement had not been made and consummated said indebtedness would not have been renewed but would have been paid off, with the necessary inference that plaintiff would have lost the patronage of the firm, are all matters to be weighed in determining whether the renewal note was given by the makers and accepted by plaintiff in novation of the old debt. Defendants requested the submission of this issue, and the court refused to submit the same. While we are not prepared to approve the form in which the submission of such issue was requested, we think it was sufficient to call the court's attention thereto and to require a proper submission thereof. W. L. Dugger, who acted both for himself and for the principal debtors in said transaction, contends that said renewal note was executed and delivered in satisfaction, discharge, and novation of the balance due on the original purchase price of the assets sold to said firm and in full satisfaction and discharge of all prior liability therefor, including the guaranty sued on. Whether such was in fact his intention and purpose at the time, and whether Mr. Milam, acting for plaintiff, in accepting said note and surrendering the old notes, so understood and agreed, should have been submitted to the jury for determination by proper issues.

Two separate causes of action are sued on in this case. One is based on the notes sued on, which were given for purchases by said firm on or after February 7, 1925. The other is based on said renewal note. These causes of action are severable. The judgment of the court denying plaintiff a recovery on the notes given for purchases subsequent to said last-named date is affirmed. Moore v. Moore (Tex. Civ. App.) 259 S. W. 322, 327. The judgment of the court awarding plaintiff a recovery upon said $13,667.75 note is reversed, and the cause of action asserted thereon remanded to the trial court for further proceedings not inconsistent with this opinion.