## WILDER v. MALONE.
### No. 2798.

Court of Civil Appeals of Texas. Waco.
June 10, 1948.

Rehearing Denied July, 15, 1948.

Brooks & Bates, of Waco, for appellant.

Garrett, Garrett & Phillips, of Waco, for appellee.

TIREY, Justice.

Plaintiff brought this suit to set aside a deed executed by her agent, J. D. Matthews, to P. R. Malone. Her cause of action was grounded upon an alleged conspiracy between Matthews and Malone to defraud her and she alleged substantially that said Matthews and Malone perpetrated a fraud upon her. At the close of the evidence defendant Malone filed motion for an instructed verdict, which was granted, and the judgment of the court followed the verdict of the jury, and plaintiff has appealed.

The judgment is assailed substantially on the ground that the evidence was sufficient to raise the issue that Malone was guilty of fraud in accepting the deed executed by Matthews as attorney-in-fact for plaintiff, and by reason thereof said issue should have been submitted to the jury. In passing upon this question "it is our duty to disregard all conflicts in the

testimony; to consider the evidence adduced in the case in the light most favorable to plaintiff, and to indulge in his favor every intendment reasonably deducible from the evidence. Anglin v. Cisco Mortgage Loan Co., 135 Tex. 188, 141 S.W.2d 935. When the facts are controverted, or such that different inferences may be reasonably drawn therefrom, an issue of fact is raised; it is only when the evidence is harmonious and consistent, and the circumstances permit of but one conclusion, that the question becomes one of law for the determination of the court. Wininger v. Fort Worth & D. C. R. Co., 105 Tex. 56, 143 S.W. 1150." James v. Missouri-Kansas-Texas R. Co., Tex.Civ.App., 182 S.W.2d 921, 922, writ ref.

Plaintiff's amended petition alleged in effect that she was an unmarried adult woman and that she acquired title to Lots 17 and 18 in Block 6 of the J. Wiseman and Company Addition to the City of Waco on May 18, 1944; that for several years prior to August 10, 1947, and up to the time of the transaction here complained of defendant Malone had been acting as her agent in renting her real property and collecting her rents; that on the 10th of August she was in a car with J. D. Matthews and she had a conversation with Malone in which she asked him to make her a loan of $1,000 on the above property; that Malone advised her that he would buy said property for $1,000 but that he did not have the cash of his own that he could lend her; that plaintiff told defendant she did not want to sell the property and that she had recently turned down an offer of $1,500 for the property but that she was willing to put the property up as security for a loan of $1,000; that Malone told her if she would let him have her abstract he would try to arrange a loan for her the next day; that she gave him the abstract and Malone told her to see him the next day; that she trusted defendant with her abstract and to arrange a loan for her, and that Malone was acting for her strictly in a fiduciary relationship; that the next evening Malone called her and said he had arranged the loan for two years; that she told him she preferred a three year loan,

and Malone said that such time would be all right and that he would prepare the notes and send them around to plaintiff's house by his secretary for her to sign; that later Malone's secretary called upon her at her home with the notes and that she signed the instrument where the secretary directed her to sign; that she did not read it, nor did defendant's secretary read it to her, nor was there any acknowledgment taken of her signature; that she relied solely upon the representations of Malone and his secretary as to the contents of the instrument she signed; that later in the same evening Malone came to her home and delivered her some rent money he had collected and that she thanked him for arranging the loan and he said nothing to advise her of the fact that he had previously accepted a deed from Matthews to the property for a consideration of $800 cash; that Malone and Matthews entered into a conspiracy to defraud her and that Malone, by virtue of his false representations, induced her to sign an instrument which later proved to be a quitclaim deed; that under the terms of the deeds executed and delivered by her and her agent, Malone purchased the property for a consideration of $800, and that at the time Malone accepted the deed to said property he knew that Matthews had no right or authority to convey the property for the price of $800, and that he knew that plaintiff wanted to make a loan on the property and not make a sale thereof. She prayed that said conveyances he held fraudulent and for naught and that they be set aside, and for general relief.

Pertinent to this discussion plaintiff testified to the effect that on the night of August 10th she was in company with J. D. Matthews in his car and that she saw defendant Malone; that she called him to the car and had a conversation with him about the property; that she told him in this conversation that she wanted to borrow some money on this property and that Malone told her he didn't have any money to lend her but that he thought he could arrange the loan for her and that he would let her hear from him the next day; that about 7 o'clock Monday night of the fol-

lowing day he called her on the telephone and said: "I Have that money for you, Mrs. Lee. * * * I am going to send my secretary over there with a note for you to sign for the money. You can get the money in the morning. Your abstract was O. K."; that a short time after her conversation with Malone she signed the paper which Malone sent to her by his secretary; that she couldn't find her glasses and did not read the instrument and that the secretary did not read it to her and that the secretary did not take her acknowledgment; that the secretary did not tell her what the paper was and that she didn't ask her, because she had just talked to Malone. She further testified that Malone said to her: "How do you want this money, for two years? I said, 'No, you had better give me three years, on or before.' Malone said: 'All right, Mrs. Lee, I will send my secretary over there for you to sign and I will have the money ready and call you to come over and get the money Tuesday.'" She further testified to the effect that Malone came by her home later that Monday night and brought her some rent money, but he didn't mention anything about the loan, nor did he say anything about having bought the property that day from her attorney-in-fact, J. D. Matthews. A few days after the foregoing transaction she testified that she went to Malon's office in company with her sister and had the following conversation with Malone: "Well, why didn't you tell me you bought that piece of property? I said, it was understood you are responsible for my abstract; you are a licensed man and responsible. He said Matthews come there three times to borrow that money. He told him he didn't loan money but he would buy that property off of him and he said finally he got him to sell." She further testified to the effect that she told Malone that she was getting a loan on the property in order that she might buy the Wiseman cafe; that she did not tell Malone that anything Matthews did was all right, and that Malone had had charge of renting her property for some seventeen years.

Plaintiff's sister, I. V. Dooley, who accompanied her to Malone's office, testified: "We went in the office and he spoke to us, told us to have a seat, and said, What is there for you all. She asked him, I came for my deed. He said, You don't have any deed. She told him yes, she did have a deed, she said she didn't give him no deed for her property, and he say, Yes, you signed the deed, and she said, No, when your secretary sent that note over there for the $1000.00 I signed that, but I didn't sign no deed, and he went ahead then and read it off to us. * * * He said those lots is mine; you don't have any lots. I bought those lots. And he said, the notes that you signed, we just tore that up and Matthews signed the deed for you. And she said, Well, I didn't tell him to sign no quitclaim deed. I just signed a note for the thousand dollars for the three years to be paid back on or before three years.

"Q. Did Malone say what he had done with that note? A. He said they tore that note up.

"Q. He tore the note up? A. Yes, sir.

"Q. Did he say anything about giving the pieces to Matthews? A. No, sir, he didn't, and she said she didn't want to sell the lots, she wanted to borrow money on them, and he said one person had offered $1500.00 and showed her a card with the name on it. * * *

"Q. What further conversation did you have with him? A. I said, Malone you should have told her that Matthews—that you had bought the lots from Matthews when he was there and then perhaps she could have stopped him before he got away with the money. And he said, Well, he didn't know, he didn't have to tell her that he had bought the lots."

The power of attorney tendered in evidence which plaintiff gave to J. D. Matthews was dated July 31, 1947. The evidence is without dispute that Malone saw the plaintiff in the car with Matthews on the night of August 10th; that on Monday, August 11th he purchased the property from Matthews and paid him $800 for the property and required a quitclaim deed from plaintiff, and that this instrument was executed by plaintiff under date of August 11, 1947. Plaintiff also tendered

testimony by a real estate man to the effect that the property was worth $1,500, and that it was not for sale.

 Viewing appellant's testimony in its most favorable light, which it is our duty to do, we think that her testimony raised the issue that defendant Malone had assumed the responsibility of becoming her agent for the purpose of obtaining a loan for her on the property; and if he did do so, he could not become a buyer of the property until he had first terminated his agency with his principal. See Allison v. Harrison, 156 Tex. 582, 156 S.W.2d 137 (opinion adopted by S.Ct.), point 1, on page 140 for statement of the rule and the reason therefor.

■ But it is the position of appellee that since Malone tendered in evidence the quitclaim deed from appellant to him, that her uncorroborated testimony is insufficient to impeach the certificate of acknowledgment to the quitclaim deed, and relies on the rule announced in Texas Osage Co-op. Royalty Pool v. Sullivan, Tex.Civ.App., 93 S.W.2d 566. It will be observed that in the foregoing case there was no contention that Hutson, the Notary, in any manner imposed upon or misled Mrs. Sullivan in the matter. In the case at bar the testimony tendered is to the effect that Malone was acting as her agent in obtaining the loan and, by his telephone conversation to the appellant, misled her as to the paper she was executing. This, in our opinion, distinguishes the Osage case from the case at bar. In Buchanan v. Burnett, 102 Tex. 492, 119 S.W. 1141, point page 1142, 132 Am.St.Rep. 900, we find this rule: " 'When once it is established that there has been any fraudulent misrepresentation, * * * by which a person has been induced to enter into a contract, it is no answer to his claim to be relieved from it to tell him that he might have known the truth by further inquiry. He has a right to retort upon his objectors: "You, at least, who have stated what is untrue * * * for the purpose of drawing me into a contract, cannot accuse me of want of caution, because I relied implicitly upon your fairness and honesty." ' " See also Strange v. Cooper Grocery Co., Tex.Civ.App., 4

S.W.2d 232, point 12, page 237; Id., Tex. Com.App. 18 S.W.2d 609, points 2 and 3, page 611, 612.

■ Applying the rule of law announced in James v. Missouri-Kansas-Texas R. Co., supra, to the above testimony, we think the court erred in giving an instructed verdict for defendant. Since the case will have to be reversed and remanded, we refrain from further discussion of the testimony.

Accordingly, the judgment of the trial court is reversed and the cause is remanded for a new trial.