W. W. ANGLIN ET AL v. CISCO MORTGAGE LOAN COMPANY.

No. 7472. Decided June 26, 1940.
(141 S. W., 2d Series, 935.)

*Turner, Seaberry & Springer,* of Eastland, for plaintiffs in error.

The mere cancellation of D. M. Anglin's prior indebtedness to Cisco Banking Company, if sufficient to constitute said bank a bona fide holder of said notes as personal obligations, did not constitute the said bank a bona fide lien holder or purchaser of the superior title to the land for value, and without notice. A purchaser who credits the purchase price on a pre-existing debt has not advanced anything on the faith of his purchase, and has lost nothing if his title should prove worthless. Hill v. Engle, 89 S. W. (2d) 219; Wood v. Sparks, 42 S. W. (2d) 142; Swann v. Rotan State Bank, 115 Texas 425, 282 S. W. 789.

*F. D. Wright,* of Cisco, for defendant in error.

Vendors by their deed have parted with title and deprived themselves of evidence of ownership upon which to base the claim of homestead. Eylar v. Eylar, 60 Texas 315; Shields v. Little, 40 S. W. (2d) 850; Humphreys v. Standard Savings & Loan Assn., 80 S. W. (2d) 438.

Mr. Chief Justice Moore delivered the opinion of the Court.

On June 2, 1936, Cisco Mortgage Loan Company, a Texas corporation, filed suit against W. W. Anglin and Phillips Petroleum Company, defendants. The allegations with respect to the Petroleum Company become immaterial, as that company was dismissed from the case on the trial in the district court, and no complaint is here made with respect to that action.

Plaintiff alleged that on October 23, 1931, D. M. Anglin and wife, Mary E. Anglin, conveyed to W. W. Anglin a tract of land in Eastland County, and as part consideration therefor the grantee executed and delivered to D. M. Anglin nine vendor's lien notes, dated October 23, 1931, for $100.00 each, providing for interest and attorney's fees, and due, respectively, on or before November 1 of each year from 1933 to 1941, inclusive, payable to D. M. Anglin or order, and containing a provision for accelerating their maturity at the option of the holder in the event of the maker's failure to pay the principal and interest when due; and that it had become the owner in due course of these notes, which defendant had failed to pay, except certain interest and a small amount on the principal, and for which reason plaintiff had elected to mature all of the notes. Plaintiff prayed judgment against defendant, and for foreclosure of the lien against the land described in the petition.

The defendant by his answer alleged that at the time of the execution of these notes D. M. Anglin and his wife, Mary E.

Anglin, were his father and mother; that the land in question, which contained less than 200 acres, was their homestead; that at the time of the execution of the notes, D. M. Anglin was indebted to the Cisco Banking Company in a named amount, and that the officials of the bank conceived the idea of securing a lien upon such homestead by having D. M. Anglin and wife execute a pretended conveyance of the same to the defendant, and by having the deed to recite the execution and delivery of notes by defendant, to be secured by a vendor's lien upon the land, and to be transferred by D. M. Anglin to the bank; that D. M. Anglin and wife never sold said land to the defendant, and that the purported conveyance from them to him evidenced a pretended and simulated sale for the purpose aforesaid; that defendant never received a deed to the land, never paid any consideration therefor, and never went into possession of the same; that D. M. Anglin and wife were at the time of such pretended sale in possession of the land, and continued to use and enjoy the same as their homestead so long as they lived; and that such facts were known to the Cisco Banking Company and the plaintiff and their officers, or that they had notice of such facts as were sufficient to put a reasonably prudent person upon injury as to the homestead rights of D. M. Anglin and wife; and further that no consideration was paid to the defendant for the execution of said pretended notes, and having no title to or interest in the land by virtue of such void and pretended sale, he was not liable on the notes.

It was further alleged by defendant that D. M. Anglin died intestate April 9, 1934, and his wife, Mary E. Anglin, died intestate July 6, 1935; that no administration was had upon the estate of either of them; that they left surviving as their heirs their children, the defendant, W. W. Anglin, Joe B. Anglin, Nellie Anglin, Bertha Anglin Wilson, and D. M. Anglin, Jr.; that Joe B. Anglin, a minor, and Nellie Anglin, unmarried, both resided with their parents on the land in question, and continued to live thereon after the death of their parents, using and enjoying the same as a homestead until a short time prior to the bringing of this suit, when for causes unnecessary here to state, they were compelled to temporarily move from said premises. Defendant prayed that plaintiff take nothing by its suit, and that the deed and vendor's lien notes be cancelled and the title to the premises be quieted in the heirs of D. M. Anglin and wife, Mary E. Anglin.

Joe B. Anglin and Nellie Anglin, by leave of court, filed their petition of intervention, in which they alleged in sub-

stance the same facts pleaded by defendant, and they likewise prayed that the pretended deed and vendor's lien notes be declared to be a cloud upon the title to said land, and that the same be cancelled.

Plaintiff by replication pleaded matters by way of estoppel against defendant and intervenors.

At the trial, and after the close of the testimony, the district court instructed a verdict in favor of plaintiff and against defendant and intervenors on all issues, and judgment was accordingly rendered on the 7th day of December, 1936, for the amount of the notes, interest, and costs, and for a foreclosure as against defendant and intervenors of the vendor's lien on the land described in plaintiff's petition. From this judgment defendant and intervenors perfected an appeal by writ of error to the Court of Civil Appeals for the Eleventh Supreme Judicial District, and that court affirmed the judgment of the dictrict court. 118 S. W. (2d) 817. The case has come to this Court by writ of error to the Court of Civil Appeals, granted upon the application of defendant and intervenors as plaintiffs in error here.

Section 50 of Article XVI of the State Constitution provides, in part, as follows:

"Sec. 50. The homestead of a family shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon * * *. No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the husband alone, or together with his wife; and all pretended sales of the homestead involving any condition of defeasance shall be void."

■ If the instrument under consideration is of the character denounced by the Constitution, it is void, regardless of its form. Therefore, it became the duty of the trial court, in the first instance, to look beyond the language of the purported deed and to consider, if from the fact and circumstances surrounding its execution, and in evidence, an issue of fact was created which showed or tended to show that the intent of the grantors was to fix a lien upon the homestead in contravention of the Constitution. It is immaterial in the consider-

ation of this case whether the purpose of the grantors was to further secure the bank in the payment of D. M. Anglin's existing indebtedness, or to transfer these notes to the bank in cancellation of such indebtedness, in whole or in part, if there was an understanding, express or implied, between the grantors and the grantee that when the purported notes and deed had served their purpose, the homestead should be reconveyed to the grantors.

The effect of the quoted constitutional provision is well stated by Critz, J., in the case of Sisk v. Randon, 123 Texas 326, 70 S. W. (2d) 689, as follows:

"Under the above constitutional provision it is permissible to prove that a deed was in fact intended as a mortgage. The pretended sale, with condition of defeasance, prohibited by the Constitution, includes any character of pretended sale, having for its purpose the placing of a lien on the homestead, other than those expressly permitted by the Constitution, and it is immaterial whether or not the condition of defeasance is expressed in the instrument. In this regard the latter portion of the above quoted provision of the Constitution is an enlargement of the prohibition against mortgages, deeds of trust and other liens on the homestead. It is not the condition of defeasance that is condemned, but the pretended sale. Astugeville v. Loustaunau, 61 Texas, 233; Hardie v. Campbell, 63 Texas, 292. When it is shown that the conveyance was in fact intended as security for debt, with a condition of defeasance upon the payment of the debt, a pretended sale within the inhibition of the Constitution is shown. Hardie v. Campbell, 63 Texas, 292. In such instance it is not necessary to show fraud, accident, or mistake, and the constitutional prohibition against pretended sales cannot be defeated by reciting a contractual consideration."

Under the present Constitution the fact that the homestead owners may have removed from the homestead or that they died subsequent to the execution of such a mortgage or pretended deed, will not in either instance make that valid which the Constitution has expressly denounced as being forever void. Inge v. Cain, 65 Texas 75; Hays v. Hays, 66 Texas 606, 1 S. W. 895; Madden v. Madden, 79 Texas 595, 15 S. W. 480; National Bond & Mortgage Co. v. Davis, 60 S. W. (2d) 429; Kearby v. Cox. (Tex. Com. App.), 211 S. W. 932; Toler v. Fertitta, (Tex. Com. App.), 67 S. W. (2d) 229; Rich v. Walker Smith Co. (Tex. Com. App.), 57 S. W. (2d) 1098.

The first and principal question, therefore, which this Court must decide is as to whether the evidence raised an issue which should have been submitted to the jury, tending to show that the purported deed from D. M. Anglin and wife, Mary E. Anglin, was, as alleged by plaintiffs in error, a pretended sale of the homestead for the purpose of creating an apparent lien against the homestead, the ultimate purpose of which was to credit or cancel the existing indebtedness of D. M. Anglin in favor of the Cisco Banking Company.

■ In determining in any case whether or not error has been committed by a trial court in instructing a verdict, the testimony must be considered in the light most favorable to the losing party. Conflicts in the testimony must be disregarded, and every intendment reasonably deducible from the evidence must be indulged in favor of such party and against the verdict. Charles v. El Paso Elec. Co. (Tex. Com. App.), 254 S. W. 1094; Keely v. Carpenter (Tex. Civ. App.), 67 S. W. (2d) 328 (wirt of error dismissed) ; 3 Tex. Jur., pp. 1049-51.

■ Bearing in mind the foregoing statement of law, we will summarize in some detail the pertinent facts as disclosed by the record, which we have concluded sufficiently raised issues which should have been submitted to the jury.

It is unquestioned that the premises in controversy constituted the homestead of D. M. Anglin and wife at and for some years prior to the execution of the notes and deed in question. The notes are dated September 23, 1931, and the written transfer of the notes by D. M. Anglin to the bank bear the same date, whilst the deed was not dated until October 30, 1931. All of said notes were personally endorsed by D. M. Anglin. D. M. Anglin and wife were in possession of the homestead premises when the notes and deed were executed, and they remained in such possession until the death of D. M. Anglin, April 9, 1934, and thereafter his wife, Mary E. Anglin, resided on such premises until her death July 6, 1935.

The bank knew that this land constituted the homestead of these people, and that they were residing thereon when the notes and the deed were executed. The bank also knew that D. M. Anglin and wife were the parents of W. W. Anglin, the grantee named in the deed. W. W. Anglin at the times mentioned lived in a distant county, and the notes were mailed to him in an envelope bearing the return address of the bank's lawyers. One of plaintiff's lawyers took the acknowledgements of D. M. Anglin and wife to the deed, and also D. M. Anglin's acknowledgement to his written transfer of the notes to the

bank, which transfer predated the deed, as did the notes. The deed was never sent to W. W. Anglin by D. M. Anglin, or by anyone for him, and W. W. Anglin never saw the deed, nor had it in his possession. The deed was filed for record in the office of the county clerk of Eastland County on November 4, 1931, and the only testimony as to how it came to be recorded was by Guy Dabney, President of the Cisco Mortgage Loan Company, also vice-president of its predecessor, the Cisco Banking Company, who stated in answer to questions by the defendant, as follows: "I think he (D. M. Anglin) brought the whole thing at once. I don't know whether he had the transfer or not; he either had it or made it there; if I remember correctly we sent the deed and the transfer over here for record at the same time." D. M. Anglin gave no directions to the bank or any of its officials to have the deed recorded.

There were ten alleged vendor's lien notes recited in the deed, aggregating $1,000.00, which was the same amount as the aggregate of the several items of indebtedness then owing by D. M. Anglin to the bank. The deed recited a fictitious cash consideration in addition to the notes. W. W. Anglin never took possession of the place after the execution of the deed, nor was it his intention to do so, nor was it his intention to purchase this land. He never collected any rents from D. M. Anglin, or from his mother after D. M. Anglin's death. The Cisco Banking Company did not pay D. M. Anglin any money for the transfer of the notes by him to the bank, but merely gave him credit for or on his indebtedness to the bank. After the notes were transferred by D. M. Anglin to the bank, he, alone, was notified by the bank to pay such of the notes as became due during his lifetime. He did pay the first note, and he also paid some interest on all the notes at different times. W. W. Anglin was never notified by the bank or the plaintiff to pay any of said notes, nor did he make any such payments.

At the time this deed and these notes were executed the Cisco Banking Company was in process of liquidation. By an instrument of writing dated June 22, 1934, Cisco Banking Company sold, transferred, and assigned to plaintiff, Cisco Mortgage Loan Company, all its assets, for a stated consideration of $10.00 and assumption of the indebtedness of the Banking Company. The stockholders of the Mortgage Loan Company are the same persons as those who owned the Cisco Banking Company.

It is obvious that these facts and circumstances tended, at least, to show that both the grantors and the grantee by their actions treated the purported deed as of no effect as a con-

veyance of the title of the homestead. It is also significant that the ten alleged vendor's lien notes measured the exact aggregate amount of the items of indebtedness then owning by D. M. Anglin to the Cisco Banking Company, and that these notes were transferred to the bank contemporaneously with their execution, and before there was any delivery of the deed, actual or constructive, if there ever was such a delivery. These facts could reasonably have been considered by the jury as evidence of an understanding between the grantors and grantee and the Banking Company at and prior to the execution of these instruments that the purpose of the grantors was not to convey title, but to give further security to the Banking Company for the payment of D. M. Anglin's indebtedness. Consistent with that not unreasonable deduction was the fact that at no time prior to the death of D. M. Anglin did the bank or the plaintiff by any act of theirs indicate that they considered that W. W. Anglin was liable to either of them, notwithstanding he was the apparent maker of the notes.

It was said by the Supreme Court in the case of Loving v. Milliken, 59 Texas 423, that in determining whether an instrument is to be construed as an absolute conveyance or a mortgage when there is no defeasance expressly agreed upon or recited in the deed, equity looks to all the circumstances preceding and attending the execution of the instrument, and sometimes those which have subsequently occurred. "From these the transaction will take its hue, no matter what coloring the declarations and apparent aggrement of the parties have attempted to give it."

In Gray v. Shelby, 83 Texas 405, 18 S. W. 809, this Court again said that the character of an instrument, such as the deed now under consideration, was to be determined "by the intent with which the grantors executed and the grantee received it."

In this case the intent of the grantee not to consider the purported deed as a conveyance of the Anglin homestead to him was shown by positive testimony. A like intent of the grantors in executing such instrument may reasonably be inferred by their continuing to reside upon the homestead the remainder of their lives, without making any attornment to the grantee, and by D. M. Anglin continuing to recognize the notes as evidence of his primary indebtedness to the bank.

In Keely v. Carpenter (Tex. Civ. App.), 67 S. W. (2d) 328, the court reversed the judgment of the district court,

which had given a peremptory instruction in a case where the appellants as plaintiffs below sought to annul a deed purporting to convey their homestead, on the ground that the instrument was in fact a pretended sale of the homestead, given for the purpose of creating a mortgage in favor of the appellee. In the course of its opinion the court quoted from Devlin on Deeds (2d Ed.), vol. 3, p. 1654, where it is said: "If the vendor remains in possession of the property after the alleged sale, this is a circumstance that tends to show that it was not really a sale but a mortgage, for such continuing possession in the vendor, after a sale, if not inconsistent with the sale, is an unusual accompaniment of it."

The case of Young et al v. Blain (Tex. Com. App.), 245 S. W. 65, involved also the question of a pretended sale of the homestead, and there, as in this case, the trial court had given a peremptory instruction against the homestead claimants, and his action in so doing was affirmed by the Court of Civil Appeals. In reversing the judgments of the appellate and trial courts, the Commission of Appeals, after citing with approval the case of Loving v. Milliken, supra, said:

"Our Constitution guarantees to our people the right of trial by jury. Of this right they should not be lightly deprived, but only where the case is clearly one for the court. We do not think the case at bar is such a one. As we view it, the peremptory instruction should not have been given. We think the case should be reversed in order that the jury may determine whether the instrument was, in fact, a deed or a mortgage."

It is hardly necessary to say that this case is not controlled by the doctrine announced in Eylar v. Eylar, 60 Texas 315, which seems to be relied upon by defendant in error, and which was cited in the opinion of the Court of Civil Appeals. Here the questioned deed had not been recorded when the bank acquired the notes from the grantor, D. M. Anglin. Nor was the deed exhibited to the bank by the grantee as a delivered instrument at or before the transfer of the notes, but to the contrary the deed was then found by the bank in the possession of the grantor; and it appears that the only incident that might tend to show a delivery of the deed was the act of the grantor, D. M. Anglin, in surrendering the deed, together with the notes, to the bank. These facts, alone, regardless of all other questions in the case, made it the duty of the bank to make proper inquiry of the grantors, who were then in possession of the homestead, in order to ascertain their intent and purpose in executing the purported deed. This duty, under the circumstances, would

have been imposed upon the bank, even had it paid a valuable consideration, in law, for the notes without actual knowledge of the invalidity of the deed.

In the Eylar case the owners conveyed their homestead by deed absolute on its face, and which recited a cash consideration paid. The deed was recorded, and several months thereafter the vendee sold the land to another person, who paid a valuable consideration therefor, without actual knowledge that the deed was claimed to be in reality a mortgage. On that state of facts the court held that the remote vendee was not required to inquire further as to the title when he found on record in the proper county a deed from the homestead owners properly proved up and registered, notwithstanding they remained in possession of the premises. That holding was necessarily predicated upon the doctrine of estoppel, although that equitable principle was not elaborated upon by the court in its opinion.

The Eylar case has several times been followed by this Court, but only in cases when the facts were shown to be within the closure of that case. It is not important in the consideration of this case.

■ The defendant in error is correct in asserting that the homestead owners might lawfully, if they saw fit so to do, sell their homestead for the purpose of paying D. M. Anglin's indebtedness to the bank, and if the jury should so find, other questions will become immaterial. However, as heretofore held, the evidence raised the issue that the deed was not an absolute conveyance, but that it evidenced a pretended sale of the homestead for the purposes above mentioned; and if such is found to be the case, the bank will not occupy the position of a bona fide holder of the purported lien against the homestead, notwithstanding it may have become a prima facie bona fide holder of the notes, stripped of the lien. The rule pertaining to such a situation is well announced in the case of Hill v. Engel, 89 S. W. (2d) 219 (writ of error refused), wherein it was said:

"* * * It may be conceded that in the absence of evidence to the contrary, the holder of a negotiable note is presumed to be a good-faith purchaser for value and without notice, and that his right to judgment for the debt evidenced by the note is not affected by the undisclosed equities between prior parties; but this rule of commercial law prevails for the purpose of facilitating the transfer of negotiable paper and applies only to the maker's personal obligation to pay the debt. It does not govern the right to enforce the lien. Wood v. Sparks, (Tex. Com. App.), 59 S. W. (2d) 361, pars. 3 and 5, and cases

there cited; Murphy v. Williams, 103 Tex. 155, 124 S. W. 900; First Nat. Bank of Muscogee v. Campbell, 24 Tex. Civ. App. 160, 58 S. W. 628."

■ If, as the record now shows, the notes were acquired by the bank in consideration of its crediting or canceling the pre-existing indebtedness of D. M. Anglin to the bank, such consideration, alone, would be insufficient to make the bank a bona fide holder of the alleged lien, if the deed was a pretended one within the purview of the constitutional prohibition, and it would become immaterial in such case whether the bank did or did not have notice of the purpose and intent with which such instrument was executed. That doctrine is based upon the equitable principle that one who asserts his title or right under a deed or mortgage, which is void in its inception, cannot as against the real owner claim to be a bona fide purchaser or lien holder, if he has paid nothing for his asserted title or right other than the nominal cancellation or crediting of such owner's indebtedness. "There being no new consideration, should the grantee or mortgagee," or other lien holder, "lose the land or his lien upon it, he still has his debt, and for that reason is held to have parted with nothing of value."

In addition to the Engle case, supra, see: Steffian v. Milano Natl. Bank, 69 Texas 513, 6 S. W. 823; Swann v. Rotan State Bank, 115 Texas 425, 282 S. W. 789, in which cases formerly holding to the contrary were expressly overruled; McKamey v. Thorp, 61 Texas 648; Andrews v. Security National Bank, 121 Texas 409, 50 S. W. (2d) 253; Vogel v. Zipp, 90 S. W. (2d) 668 (writ of error dismissed); Brannon v. Gartman (Tex. Com. App.), 288 S. W. 817; Walter Connally & Co. v. Gaston (Tex. Civ. App.), 295 S. W. 953.

The plaintiff was in no better position than was the bank to assert its bona fides as holder of the purported vendor's lien notes, for the reason that at the time it acquired these notes by transfer from the bank, one of the notes was past due. Harrington v. Claflin & Co., 91 Texas 294, 42 S. W. 1055; Smith v. New Waverly State Bank, 76 S. W. (2d) 201 (writ of error dismissed); Masterson v. Turnley (Tex. Civ. App.), 220 S. W. 428; Ferguson v. Wiede (Tex. Civ. App.), 46 S. W. 392. Moreover, at the time the plaintiff acquired the notes, the widow of D. M. Anglin was in possession of the homestead; and it appears that the same persons who owned the bank also owned the plaintiff corporation, and as has been expressed, it merely "stepped into the shoes" of the Cisco Banking Company. Vogel v. Zipp, 90 S. W. (2d) 668 (writ of error dis-

missed) ; Williams v. Daniels (Tex. Civ. App.), 4 S. W. (2d) 189 (writ of error refused) ; Mason v. Olds (Tex. Civ. App.), 198 S. W. 1040 (writ of error refused).

■ The district court should have submitted to the jury as an issue of fact, whether or not there was a delivery of the deed by D. M. Anglin and wife to W. W. Anglin. It was necessary that the plaintiff should have established that fact before he could be entitled to a foreclosure of the alleged vendor's lien, for in order to operate as a transfer of the title to the land, the deed must have been delivered to the grantee. It is not always necessary that such a delivery should be made to the grantee in person, as delivery to a third person for the use and benefit of the grantee is effective if accepted by the grantee. But merely placing the deed in possession of a third person does not, of itself, authorize a presumption that it was made with the intent of passing title, even though such person should cause the deed to be recorded. Steffian v. Milano Natl. Bank, 69 Texas 313; 318; National Bond & Mortgage Co. v. Davis (Tex. Com. App.), 60 S. W. (2d) 429, 433; Ford v. Hackel (Tex. Com. App.), 124 Tex. 402, 77 S. W. (2d) 1043; 14 Tex. Jur., 828.

Other questions attempted to be raised in this Court by the plaintiffs in error will not be discussed. They do not appear to be properly assigned both in this Court and in the Court of Civil Appeals. Also, any such discussion would be premature in view of the fact that the issues may not be the same in all respects upon the next trial.

The judgments of the Court of Civil Appeals and of the District Court are reversed, and the cause is remanded to the District Court for a new trial.

Opinion delivered June 26, 1940.