in the information and beyond the period of limitation.

It would have been the better practice to use the term, "on or about," rather than "on or before," yet, under the particular facts here presented, we are unable to conclude that reversible error is reflected, especially in view of the fact that there was only one transaction before the jury where the state insisted that appellant, while intoxicated, operated his automobile.

Other bills of exception have been examined and are overruled without discussion.

Finding no reversible error, the judgment is affirmed.

Opinion approved by the court.

**MATHEWS et ux. v. THORNELL et ux.**

No. 12221.

Court of Civil Appeals of Texas.
San Antonio.

Jan. 17, 1951.

Herman A. Knopp, San Antonio, for appellants.

Trueheart, McMillan & Russell, Moursund, Ball, Moursund & Bergstrom, all of San Antonio, for appellees.

POPE, Justice.

This is a boundary dispute which resulted in an instructed verdict for the plaintiffs and against the defendants' plea of adverse possession for ten years.

Thornell and wife, appellees, commenced a trespass to try title suit against Mathews and wife for a disputed strip of property located between tracts owned by the Thornells and the Mathews. The Thornells owned two and a half acres in Tract 364, Mayfield Park, an addition within Bexar County, and the Mathews owned a portion of Tract 365, immediately to the east of the Thornell tract. The contiguous tracts front on Villaret Street, which is their north boundary, and extend back eight hundred feet in a southerly direction from that street. The east boundary of the Thornell Tract 364 is the west line of the Mathews Tract 365. For some time a strip of land thirteen feet wide and extending back from Villaret Street 480 feet has been fenced in with the Mathews Tract 365, although the true survey line shows the strip is out of the Thornell Tract 364. The defendants, with their predecessors, claimed the strip under the ten-year statute of limitations. The Mortgage Loan & Agency Company was the agreed common source and the plaintiffs established superior record title.

The plaintiffs' judgment on the instructed verdict should prevail unless the defendants, by their plea of adverse possession raised an issue for the jury. Since the court instructed a verdict for the plaintiffs, we shall consider the evidence in its most favorable light toward

the defendants. Anglin v. Cisco Mortgage Loan Company, 135 Tex. 188, 141 S.W.2d 935, 938; Happ v. Happ, Tex.Civ. App., 160 S.W.2d 227. Plaintiffs urge that the instructed verdict in their favor was proper and that no limitation title matured because the necessary ten-year period of hostile possession was broken by a period of permissive user to the adjoining tract, granted a Mr. Fred Popham, one of defendants' predecessors in title. Hermann v. McIver, 51 Tex.Civ.App. 270, 111 S.W. 766. The defendants take the position that there was evidence which proved Popham's permissive use did not extend to the strip in dispute, but that it applied to other lands, and that an issue should have been submitted to the jury inquiring as to what property was included in the permissive user given Popham.

Some time during 1936, Mr. Popham rented Tract 365 and erected the fence on what he mistakenly believed to be the true boundary line. In 1938 he bought Tract 365 and continuously thereafter treated all the property as his own, including the encroachment upon which there was a garage. He sold the property in March of 1945. Under the facts of the case, hostile possession by Popham was necessary to a successful claim for ten years adverse possession by the Mathews, his successors.

The evidence showed that the Mortgage Loan and Agency Company, from 1936 until 1943, owned the adjoining Tract 364, as well as other property still farther to the west of Tract 364. The evidence also showed that the Mortgage Company granted Mr. Popham permissive use of some property. Mr. Popham was called as a witness and a portion of his testimony was as follows:

"Q. You were also using Lot 364, the part adjoining your lot over *there,* weren't you? A. I was using that seven and one-half acres in *there.*

"Q. That was 364 and probably 363 over *here?* A. I guess so. I never went by any tracts, such as that at all.

"Q. How did it happen that you were using that seven and one-half acres? A. Well, there is a little patch down *in below me there,* I was using it for a time. I went to see the Mortgage Loan and asked them about a 'fence, putting a fence *there,* and letting me use it.

"Q. Was that the seven and one-half acres? A. Yes, it was about seven acres *in back* of us.

"Q. When you went to see the Mortgage Loan Agency about that, what did they tell you? A. They said for me to go ahead, fence it, and use it.

"Q. You did fence all of this 364, west of you, you built a fence *there* before you got their permission? A. I had *this* fenced, this in *here.*

"Q. You did get their permission to use that land *there?* A. Sure."

Mr. Popham testified that there was a cross fence south of a house on Tract 365, and one appears in the exhibits approximately 400 feet from the north line. He testified that the Mortgage Company "told me to go ahead and fence it and use it *back there,* that contained seven and a half acres between me and the other house there." When the direct question was asked whether he fenced all of Tract 364, from the above testimony it is seen that he did not give a direct answer, but apparently indicated some place on a map, but this testimony is not tied down to any map or exhibit in the record.

A neighbor who had lived near this property since 1936 testified that "They (Popham) used to move the cross fence to keep his cattle in there." She testified as follows:

"Q. That is *in the back?* A. In the back.

"Q. He moved that from time to time? A. Yes, sir.

"Q. What was he using the land for? A. He had hogs and cattle out *there.*"

The difficulty of evaluating these locative statements which are not tied to positions on the maps is recognized and is partially clarified by statements in the

briefs. Appellees state that the witness Popham was testifying by reference to defendants' Exhibit G, and appellants state that the witness Popham was testifying by reference to defendants' Exhibit A–1. These statements in the briefs are unchallenged and are no doubt true. But if we award full merit to such explanations in both briefs, there is contradictory evidence as to the land covered by the permissive use. Where the witness was pointing at positions on these maps is nowhere revealed by the written record. The pertinent testimony locating where Popham ran his stock under his permissive user from the Mortgage Loan and Agency Company is so uncertain and indefinite that we are unable to determine whether the testimony means he was using all of Tract 364 or land behind the position of the cross fence. The record does not show what property was included in the permissive use granted by the Mortgage Company.

Not knowing what the testimony was, we are unable to determine if it is conclusive. The judgment will be reversed and the cause remanded.