### FENDER v. FARR.

No. 6648.

Court of Civil Appeals of Texas. Texarkana.

Oct. 15, 1953.

Rehearing Denied Dec. 3, 1953.

LeRoy LaSalle, Carthage, for appellant.

John D. Raffaelli, Texarkana, for appellee.

LINCOLN, Justice.

Appellant instituted this suit in Bowie County, Texas, to recover the consideration alleged to have been paid by him to appellee for an oil, gas and mineral lease on lands situated in Panola County, Texas. Appellee introduced no evidence, and at the conclusion of appellant's case the court instructed the jury to return a verdict for the appellee, whereupon the court entered a "take nothing" judgment against appellant.

The appellant's petition purports to be in two counts. However, the material allegations in each count are substantially the same, that is: That on or about August 5, 1950, the appellee executed and delivered to the appellant the oil, gas and mineral lease, for which appellant paid him $995; that at the time of the execution and delivery of said lease the appellee did not own the oil, gas and mineral rights so conveyed, but had theretofore, in 1935, sold and conveyed such interest to other persons named in said petition; that simultaneously with the execution and delivery of the lease the appellee executed and delivered to the appellant a contract whereby appellee agreed and bound himself to pay to appellant the sum of $995 in the event the appellee could not establish and furnish good and merchantable title to the mineral estate conveyed by said lease within thirty days from date thereof. A copy of the lease and of the collateral agreement referred to were attached to the petition and made a part thereof.

The peremptory instruction and judgment entered thereon brings in review the correctness of such instruction under the pleadings and proof. The rule is well known that, in reviewing the action of the trial court in determining whether it was proper to instruct a verdict, the court must view the evidence in the light most favorable to the losing party. Every intendment reasonably deducible from the evi-

dence must be indulged in favor of such party and against the instruction. Where the verdict is instructed in favor of defendant at the close of plaintiff's evidence, the court will assume that the facts shown by plaintiff's evidence are true facts in the case. Tex.Jur., Vol. 3B, p. 364, et seq.; Anglin v. Cisco Mortgage Loan Co., 135 Tex. 188, 141 S.W.2d 935.

The evidence shows that the lease contract as alleged was executed and acknowledged by the appellee, both the instrument and acknowledgment bearing date August 2, 1950. Appellee was paid by the appellant's check the sum of $995, which also bears date August 2, 1950, and the check was cashed and charged to appellant's account by the bank on which it was drawn.

The parties negotiated the lease in Texarkana on Wednesday, August 2, and a form of lease contract was drawn on that date, but the testimony shows that the parties did not have a correct description, and they agreed to meet again on Saturday, August 5, for the purpose of completing the lease. On Saturday the appellant, and his attorney returned to Texarkana and the lease introduced in evidence was executed and delivered. Whether additions were made to the first instrument considered by them, or whether a new instrument was drawn, the evidence does not disclose. But in any event, the lease as finally agreed upon was delivered to and accepted by appellant on Saturday, August 5. At that time the question arose as to whether the appellee had a good and merchantable title to the oil, gas and mineral estate to be transferred. In view of that, the appellee on August 5, 1950, executed and delivered to the appellant the following instrument which we will refer to as the collateral instrument or agreement:

"To: Mr. Harris R. Fender

Tyler, Texas.

"Whereas you have entered into a lease contract with the undersigned, A. T. Farr, under date of August 2,

1950, covering and affecting certain lands in Panola County, Texas situated in the W. G. Booker Survey and the E. M. Booker Survey and the A. Booker Survey, which said lands are more particularly described in that copy of the said lease contract attached hereto and made a part hereof by reference and marked Exhibit 'A', and which lease contract covers and affects my mineral interests in these said lands; and

"Whereas there is now a question or dispute as to my title to the said mineral interests affected by this said lease contract, and whereas there is a possibility that I may not be able to furnish good and merchantable title to these said mineral interests;

"Therefore, I, A. T. Farr, promise and hereby bind myself, my heirs, executors, successors or assigns that in the event that I cannot establish and furnish good and merchantable title to the above referred to mineral interests affected by the said lease contract to your satisfaction, or to the satisfaction of an attorney at law to be mutually agreed upon by us, then I shall pay to you the sum of nine hundred and ninety-five dollars ($995.-00) on or before thirty (30) days from this date if within thirty (30) days from this date such good and merchantable title to these mineral interests is not furnished to you or established by me to your satisfaction.

"Signed in the presence of the undersigned witnesses on this 5th day of August, 1950. (Signed) A. T. Farr. Witnesses: Thomas H. Sharp, Lowell L. LaSalle."

About two weeks thereafter appellant or his attorney asked the appellee what was being done in regard to furnishing appellant with evidence of a merchantable title and appellee informed him that he had turned the matter over to attorneys for that purpose. After expiration of the thirty-day period appellant asked appellee

"If he was going to give me a merchantable title, and he told me he had employed Jones and Jones in Marshall, to work it out, and that he would get it"; "I need a little more time." The appellant's testimony further proceeds: "Mr. Farr never presented me with the title opinion on that land, he never did anything to my knowledge. I made demand on him for Nine Hundred Ninety-five Dollars ($995.00). He never paid it. Not at any time. He stated on numerous occasions that he would pay it. I attempted to secure payment and asked him to pay it. As to what happened, he just needed a little more time to work out the title. He kept on, and kept on, and kept on. He never did return the Nine Hundred Ninety-five Dollars ($995.-00)."

Appellant introduced in evidence instruments showing acquisition of the leasehold interests in quantity, acreage, location and description sufficient to show ownership by appellee of the oil, gas and mineral rights conveyed by the lease to appellant. Such instruments bear dates in 1935, with proper recordings. Appellant also introduced in evidence instruments of record showing that the interests, rights and titles so acquired by appellee had been sold, transferred and conveyed by him in 1935 to other parties, sufficient to divest appellee of all right, title and interest in the oil, gas and mineral rights on the lands described in his lease to appellant, the effect of which is that at the time appellee executed and delivered the lease to appellant he had no oil, gas and mineral interests in said lands. The appellee objected to the collateral agreement of August 5, 1950, introduced in evidence. Having been executed by the appellee, and relating to the transaction then in hand it was admissible. Appellee urges as ground against its admission in evidence and that it should not be considered, that its execution was without consideration, and he filed a sworn plea of want of consideration for such contract. The point urged is not maintainable. Being an instrument of writing, it imports a consideration, and the rule is not changed by the sworn plea. A written contract is presumed to be supported by a consideration until the contrary appears, and the instrument itself is taken as prima facie true as to all facts stated therein. The sworn plea merely puts the consideration in issue, provided, there is evidence in support of the plea. 17 Tex. Jur., p. 291, § 80, and p. 331, § 101, citing numerous cases. The evidence shows that, however the lease may have been written up and dated, it was actually executed and signed by the appellee on August 5. That is also the date on which it was delivered, and delivery is as essential as signing and acknowledging. Therefore, the lease and the collateral agreement referred to, having been completed on the same date are to be construed and taken as one contract, to be considered together. 14 Tex.Jur. p. 926, § 147; 10 Tex.Jur., p. 286, § 166; Guardian Trust Co. v. Bauereisen, 132 Tex. 396, 121 S.W.2d 579. For this additional reason the contract was admissible in evidence and must be considered among the facts of the case. When so done it appears without contradiction that appellee recognized that there was a question about his title, and he entered into a specific contract to repay the total consideration within thirty days unless he presented the appellant a good and merchantable title to the mineral interests conveyed to appellant. This he did not do, and if the foregoing facts are sufficient to prove a prima facie case in favor of appellant, the peremptory instruction and the judgment entered thereon constitute error calling for a reversal.

The first count of appellant's petition was for an alleged breach of the covenant of good right to convey, commonly called the covenant of ownership, and technically the covenant of seizin. The second count is for an alleged breach of the covenant or warranty of title. This latter covenant operates in futuro, and not only failure of title must be alleged and proved to constitute a breach, but also actual or constructive eviction. Covenant of seizin operates in the present, and is breached by the grantor at the time the deed is made if he does not own the es-

tate in land he undertakes to convey. Eviction is not a necessary element of action for breach of covenant of seizin. Both covenants are personal, but covenant of warranty of title runs with the land, while that of seizin does not. Some of the authorities holding in keeping with the foregoing rules are the following: 12 Tex.Jur., pp. 39, 40, 55, 56, 69; 14 Am. Jur., pp. 525, 526, 540, 541, 542, 559, 560; Westrope v. Chambers' Estate, 51 Tex. 178; Shannon v. Childers, Tex.Civ.App., 202 S.W. 1030, writ refused; Langford v. Newsom, Tex.Com.App., 220 S.W. 544; Compton v. Trico Oil Co., Tex.Civ.App., 120 S.W.2d 534, writ refused; Young v. Harbin Citrus Groves, Tex.Civ.App., 130 S.W.2d 896, writ refused. In this case there is nothing in the lease to take it out of the purview of the rules stated above.

■ The covenants of seizin and of good right to convey are synonymous, and in the absence of any qualifying expressions, are read into every conveyance of land or an interest in land, except in quitclaim deeds. See 7 R.C.L., pp. 1130–1132. Sec. 45; 21 C.J.S., Covenants, §§ 40, 41, pages 911–913; 12 Tex.Jur., p. 15, § 8, p. 19, § 12. These covenants apply to leases of land for oil and gas. 12 Tex.Jur., p. 14, § 7.

■ But the appellant's case also finds finality in Art. 1297, R.S. of Texas, 1925, as follows: "From the use of the word 'grant' or 'convey,' in any conveyance by which an estate of inheritance or fee simple is to be passed, the following covenants, and none other, on the part of the grantor for himself and his heirs to the grantee, his heirs or assigns, are implied, unless restrained by express terms contained in such conveyance: 1. *That previous to the time of the execution of such conveyance the grantor has not conveyed the same estate, or any right, title or interest therein, to any person other than the grantee.* (Italics ours). 2. That such estate is at the time of the execution of such conveyance free from incumbrances. Such covenants may be sued upon in the same manner as if they had been expressly inserted in the conveyance."

■ A leasehold, as here, is an interest in land, Young v. Rudd, Tex.Civ.App., 226 S.W.2d 469, writ refused, n.r.e., and is an estate of inheritance. The lease before us reads that the lessor, appellee, "has granted, demised, leased and let, and by these presents does grant, lease and let," etc., thus bringing it within the terms of the foregoing statute. In Chapin v. Ford, Tex.Civ.App., 194 S.W. 494, writ refused; Garrett v. Butler, Tex.Civ.App., 260 S.W. 1069, error refused; and City of Beaumont v. Moore, 146 Tex. 46, 202 S.W.2d 448, it is held that under Art. 1297, supra, the covenant against incumbrance is implied in every estate of inheritance or freehold unless the implication is restrained by express terms in the conveyance. In Garrett v. Butler the opinion holds that the covenant against incumbrances as implied by the statute is as effective as if it had been expressly inserted in the conveyance. That, indeed, is the clear intention of the statute, and the decisions referred to are as applicable to subdivision one of the statute as to subdivision two. We cannot agree with counsel for appellee that the suit must be expressly based on the statute in order to rely thereon, if by such contention is meant that the statute must be pleaded *eo nominee*. The facts pleaded bring the case within its terms and that is sufficient.

■ So, the collateral agreement of appellee of August 5 above quoted did not in law add anything to appellant's cause of action on breach of covenant of seizin, the decisions and the statute referred to being sufficient. However, the collateral agreement removed any doubt, if there should be any, of the intentions of the parties in this respect, and additionally itself constituted an independent cause enforceable under the facts alleged and proved.

Appellant having alleged and proved all facts sufficient to make out a prima facie case of breach of covenant of seizin, with

resulting damages, we think the learned trial court fell into error in giving the peremptory instruction in favor of appellee. Accordingly, the judgment of the district court is reversed and the cause is remanded for a new trial.

Reversed and remanded.