Mrs. Pauline STEEN, a Feme Sole, Appellant,

v.

Jess PRINCE and wife, Emme Prince d/b/a Prince Real Estate, Appellees.

No. 7764.

Court of Civil Appeals of Texas.

Amarillo.

Dec. 18, 1967.

Herbert C. Martin, Amarillo, for appellant.

Culton, Morgan, Britain & White and Donald E. Jackson, Amarillo, for appellees.

NORTHCUTT, Justice.

This is an appeal from an instructed verdict granted plaintiffs below, Jess Prince and wife, Emme Prince, d/b/a Prince Real Estate, in a suit against Mrs. Pauline Steen, a feme sole, defendant below. Hereafter, Mrs. Steen will be referred to as appellant and Mr. and Mrs. Prince as appellees.

Appellees sued appellant for a real estate commission in the sum of $2,040.00 being six percent of $34,000.00. Appellant gave appellees a written listing of the property in question for sale at a price of $34,000.00. Appellees secured Charles E. Briggs and wife, Patricia Briggs as purchasers for said property and a sales contract was made and entered into by them and Mrs. Steen. The first agreement as to terms of sale could not be complied with by the purchasers and a new sales contract was made and entered into on March 4, 1966, and being the contract here involved. The sales contract price to be paid was as follows: $1,500.00 cash, $24,618.48 assumed by Briggs of a first lien against the property and the balance in the sum of $7,881.52 was to be paid in installments, the first six monthly installments were to be in the sum of $500.00 each being due and payable April, May, June, July, August and September. The balance was to be paid in three annual installments and the $1,500.00 was paid and received by appellant. No other payments were made and appellant had to take action to recover her property.

Appellant pleaded that originally she was unwilling to sign the listing agreement unless she received $5,000.00 and advised appellees that she could not and would not sell without realizing payment therefor in that the realty commission would take the funds derived from the home without benefiting appellant. The appellant further pleaded that by such representations and statement to appellant the plaintiff procured her signature on the listing on which they sued. Appellant further pleaded that appellees procured appellant and Charles E. Briggs and wife, Patricia Briggs to execute an unlawful and invalid contract on the 13th day of February, 1966. It was this sales contract that it later developed that Mr. and Mrs. Briggs could not carry out. That sale will not be considered any further herein as it was never completed.

Appellant further pleaded that after Mr. and Mrs. Briggs were either unwilling or unable to comply with such original sales contract that appellees withdrew the original contract and induced the appellant to execute the sales contract here involved by representing and agreeing that appellant was to receive the first $3,000.00 paid by Mr. and Mrs. Briggs before any commission would be paid to appellees and that appellees' commission would be payable out of the subsequent payments made by Mr. and Mrs. Briggs and not out of the first $3,000.00.

Appellant further pleaded appellees procured appellant's signature to the sales contract by representing, stating and agreeing that no commission would be paid by appellant until appellant had received the sum of $3,000.00 in cash and then their commission would be paid out of the next $2,000.00 paid by the purchasers.

The main point relied on for reversal is that the trial court erred in granting appellees' motion for instructed verdict because appellant's evidence was sufficient to create a fact issue for the jury's determination if not for a directed verdict in favor of appellant.

In passing upon this question, the Supreme Court of Texas in Anglin v. Cisco Mortgage Loan Co., 135 Tex. 188, 141 S.W. 2d 935, 938, has held:

"(5) In determining in any case whether or not error has been committed by a

trial court in instructing a verdict, the testimony must be considered in the light most favorable to the losing party. Conflicts in the testimony must be disregarded, and every intendment reasonably deducible from the evidence must be indulged in favor of such party and against the verdict. Charles v. El Paso Elec. Co., Tex.Com.App., 254 S.W. 1094; Keely v. Carpenter, Tex.Civ.App., 67 S.W.2d 328, writ of error dismissed; 3 Tex.Jur., pp. 1049, 1051."

See also Speights v. Deon, Tex.Civ.App., 182 S.W.2d 1016, writ refused and the cases there cited; White v. White, 141 Tex. 328, 172 S.W.2d 295 and the cases there cited.

It is undisputed that appellant received the $1,500.00 paid as the sales contract provided. The sales contract provided that Briggs was to pay $500.00 in April, $500.00 in May and $500.00 in June. These three $500.00 payments added to the $1,500.00 would make the $3,000.00 appellant claims she was to receive before appellees were to receive any commission. The next $500.-00 payment was to be paid in July. Mr. Prince testified as follows:

"Q. Well, now, you got up there, and you said you couldn't make the first contract, and then you got up another one, didn't you?

A. Yes, sir.

Q. Now, didn't you represent and state to Mrs. Steen before she ever signed that second agreement that she was to get the first three thousand dollars of the purchase money?

A. No, not in that way, no sir.

Q. And that your two thousand dollars would come out of the next payment by Mr. Briggs?

A. No, sir. Our commission was supposed to have started payments on it in July.

Q. And that was out of Mr. Briggs' payments, wasn't it?

A. If he had kept them up, yes."

The further following proceedings were had and Prince testified as follows:

"Q. Now, then, you are going to deny that you ever agreed for her to get the first three thousand dollars that was to be paid by Briggs?

A. Yes, sir.

Q. And you to get $2000 then out of this payment?

A. Yes, I do deny it.

Q. All right, are you going to deny that in my office I drew an agreement to that effect?

A. Yes, sir, I do.

Q. I say, do you deny it?

A. No, sir—you drew the agreement up and I signed it—

Q. And you and I had that agreement—

Mr. Jackson: We object to that as altering the terms of the contract—

The Court: I sustain the objection."

This is not in any manner offering the listing contract as to the right of a commission but only as to how the commission was to be paid. Prince there testified that such agreement was drawn up as contended by the appellant and that he signed the same but the court sustained an objection to that testimony.

While Mrs. Steen was testifying, the following proceedings took place:

"Q. Mr. Martin) Now then, this first contract, I will ask you whether or not you signed that with the understanding you would get five thousand dollars before any commission would be paid, the commission to be paid out of that cash?

A. Yes, sir.

Q. And did you rely on that?

A. Yes, sir.

Q. Now, Mrs. Steen, that contract never was completed, was it?

A. No, sir.

Q. Now, after they got Mr. Briggs on that contract and he couldn't complete it, then what happened?

A. Well, I thought I had five hundred dollars in escrow, and I supposed he knew—that I thought he knew that the check wasn't any good; I didn't know that I didn't have any money in escrow, but he let it out one day and he said he thought he had told me; and I said, "Well, I called Mrs. Prince, and she has my house tied up, and no money down, and that she said I would get the money, just to be patient, and I said I can't be patient, $205.00 a month is more than I can pay on the place." I had no income other than social security from my husband.

Q. Now then, but anyway Briggs was not able to carry out that first contract?

A. No, sir.

Q. What did the Princes do with reference to the deal then?

A. They called me and they said that Bryon Singleton had changed it around; they were real upset with him; said he didn't know Briggs' financial condition, and I says, "Well, the second contract only gives me three thousand dollars at time I give possession;" I says, "Mr. Prince, I can't move out of the house with only three thousand dollars unless you want your commission in the next payments,—next four payments"; and he said that would be fine with him—

Mr. Jackson: Object to this three thousand dollars matter—

The Court: Sustain the objection. Now, this has been repeated two or three times, and I think in view of that I need to tell the jury that they will not consider that question nor the answer; that this three thousand dollar deal has nothing to do with the contract they signed.

Mr. Martin: Note our exception."

The law appears settled in this state that " * * * it is in the province of the jury to resolve conflicts and inconsistencies in the testimony of a witness or between witnesses". Biggers v. Continental Bus System, 157 Tex. 351, 303 S.W.2d 359; East Texas Motor Freight Lines v. Loftis, 148 Tex. 242, 223 S.W.2d 613; Minugh v. Royal Crown Bottling Co., Tex.Civ.App., 267 S.W.2d 861, writ refused; and Volkmer v. Curlee, Tex.Civ.App., 261 S.W.2d 870, writ refused. See also Pritchard Rice Milling Co. v. Ellis, Tex.Civ.App., 266 S.W. 233, writ dismissed and Postal Mutual Indemnity Co. v. Penn, Tex.Civ.App., 165 S.W.2d 495, writ refused, holding " * * * where witness contradicts his former testimony it is the province of the jury, and not the court, to determine whether the first or last testimony is true."

The appellees here had a listing of the property for sale. No commission would be earned until the sale was consummated. Mr. Prince, in his testimony above set out, testified he agreed that he was to receive his commission from the payments to be made by the purchaser Briggs and in other parts of his testimony, he attempts to deny that fact. It is stated in Lynch Oil Co. v. Shepard, Tex.Civ.App., 242 S. W.2d 217, writ refused, as follows:

"Where there is a conflict in the testimony of a witness, it is for the jury to determine which portion of the testimony is correct".

See also the many cases there cited. We are of the opinion, and so hold, there was sufficient evidence herein that should be passed upon by the jury especially since Prince acknowledged he signed a written agreement to take his commission from the future payments to be paid by Briggs. Judgment of the trial court is reversed and remanded.