

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

December 30, 1971

Honorable Robert S. Calvert          Opinion No. M-1034
Comptroller of Public Accounts
State Finance Building          Re:   Whether Article 5421c,
Austin, Texas      78701              Sec. 11a, V.C.S., and
                                      the appropriation con-
                                      tained in the General
                                      Appropriation Bill (S.B.
                                      11, Ch. 1047, 62nd Leg.,
                                      1971, R.S.) provide
                                      authority for payment of
                                      a certain claimed refund
                                      of bonuses, delay rentals,
                                      and special sales fees
                                      paid to the State by a
                                      lessee under terms of a
                                      lease where the leased
                                      development is prevented
Dear Mr. Calvert:                     by a federal agency?

        Your request for an opinion asks the following ques-
tion:

        "Does Article 5421c, Section 11a, V.C.S.,
        and the appropriation contained in the General
        Appropriation Bill (S.B. 11, Ch. 1047, 62nd
        Leg., 1971, R.S.) provide authority for payment
        of a certain claimed refund of bonuses, delay
        rentals and special sales fees paid to the
        State by a lessee under terms of a lease
        where the leased development is prevented by
        a federal agency?"

        In addition, you have further requested whether the claim
may be validly paid under any State statute.

        House Bill 1862 was passed by the House on May 21, 1971,
and by the Senate on May 26, 1971, and approved by the Governor
and became effective on May 27, 1971; it adds Section 11a to
Article 5421c, V.C.S.

As stated in your request, the subject lease (Mineral Lease No. 58676) was dated on October 5, 1965, and was entered into between the State of Texas and Cabot Corporation for a five year primary term.  It is stated that the lease was located in the Gulf of Mexico near a bombing range of the U.S. Air Force and because of the danger involved, Cabot Corporation was prevented from drilling the lease during the primary term of the lease by the U.S. Corps of Engineers.  The lessee paid the State of Texas in good faith pursuant to their lease a total of $32,703.00 for special sales fees, bonuses and delay rentals.  Both the federal government and the lessee show that it was impossible to grant a shooting or drilling permit during the lease "since intensive bombing operations are in progress on a daily basis."  Your opinion request also states that the "School Land Board verified prerequisite facts which H.B. 1862 requires as basis for making refund."

Section 44 of Article III, Constitution of Texas, provides:

> "The Legislature shall provide by law for the compensation of all officers, servants, agents and public contractors, not provided for in this Constitution, but shall not grant extra compensation to any officer, agent, servant or public contractors, after such public service shall have been performed or contract entered into, for the performance of the same; nor grant, by appropriation or otherwise, any amount of money out of the Treasury of the State, to any individual, on a claim, real or pretended, when the same shall not have been provided for by pre-existing law; nor employ anyone in the name of the State, unless authorized by pre-existing law."  (Emphasis added.)

Since the mineral lease is dated October 5, 1965, and Article 5421c, Section 11a, V.C.S., was effective on May 27, 1971, said Article 5421c, Section 11a, Vernon's Civil Statutes, does not constitute pre-existing law to support payment of the claim. This office accordingly previously refused to authorize payment of the claim in a letter ruling, dated April 27, 1971, addressed to the Chairman of the Claims Committee, House of Representatives.  We now consider, however, a different statutory basis not dealt with or discussed in the letter ruling.

Article 5411a, Section 1(b), reads as follows:

"Section 1.   Upon proper proof as herein-
after provided, the Comptroller of the State
of Texas is hereby authorized and directed to
draw his warrant in refund of monies paid into
the State Treasury on public lands in good
faith but where the funds to which such monies
may be accredited or may have been accredited,
are not entitled thereto in any of the follow-
ing instances:

". . .

"(b)  Where the payment is made in ac-
cordance with law, but title cannot issue or
possession cannot pass, because of conflict
in boundaries, erroneous sales, erroneous
lease or other cause;. . ."

We believe that the Legislature intended by this statute
to provide a remedy to a lessee of the State for refund of the
consideration paid to the State under a lease when such con-
sideration has materially and substantially failed, although
neither party be at fault.   The statute may thus be read into
the lease as though it were expressly incorporated therein as
an integral part thereof.  Anderson-Berney Realty Co. vs. Sovia,
41 S.W.2d 279, 281 (1931), aff. 123 Tex. 100, 67 S.W.2d 222;
12 Am.Jur. 769, Contracts, Sec. 240.  It is well settled that
failure of title or possession, being a material failure of con-
sideration for a lease, would give rise to a cause of action or
remedy by lessee against a lessor for reformation, cancellation
or return of the consideration paid.  See, for example, 42 Tex.
Jur.2d 217, Oil & Gas, Sec. 92.  In 58 CJS 528, Mines & Minerals,
Sec. 209b; Fender vs. Farr, 262 S.W.2d 539, 543 (Tex.Civ.App.
1953, no writ).

In R. C. Childress vs. O. B. Siler, 272 S.W.2d 417, 420
(Tex.Civ.App. 1954, ref., n.r.e.), it is said:

"Whenever covenants of seizin or good right
to convey are contained in a deed or lease or
assignment of a lease they import an intention
on the part of the grantor to do more than give
a quitclaim, they import an intention to convey
the land or the described interest in the land
itself."

When the statute, Article 5411a, Section 1(b), is read into the lease, the latter necessarily provided that if title or possession failed, the lessor State had a legal obligation to return the monies paid to it by lessee. This was not in any way altered by, but rather modifies, the clause in the lease (Section 22), which provided in part:

> "Should Lessee be prevented. . .from conducting drilling operations thereon, or from producing oil and/or gas therefrom, after effort made in good faith, by reason of war, rebellion, riots, strikes, acts of God, or any order, rule or regulation of governmental authority, then while so prevented, Lessee's obligation to comply with such covenant shall be suspended. . ., provided, however, that nothing herein shall be construed to suspend the payment of rentals during the primary or extended term."

It is apparent that while lessee was under a duty to continue paying rentals to lessor State or forfeit the lease (Humble Oil & Refining Co. vs. Mullican, 192 S.W.2d 770 [Tex. Sup. 1946]), nevertheless his remedy for return of the rentals arose at least at the end of the primary term of the lease. While either the lessee or lessor or both may bring an action against a third party for tort during the lease, after its termination the lessor rather than the lessee is the proper party to sue where no mining was performed under the lease. 58 CJS 423, Mines & Minerals, Section 194.

Further, in Cabot Corporation's application for payment of claim against the State of Texas, the following certified language by Cabot Corporation appears:

> "Moreover, the 'Notice for Bids' issued by the General Land Commissioner and Chairman of the School Land Board for the October 5, 1965 sale of the subject Lease contained no notice or warning of such bombing activities or conditions specified above and Cabot without knowledge of such facts bid for and purchased such Lease at such sale.

> "In summary, the subject Lease was not at the time of sale, or at any time during its primary term, subject to being explored and

developed for oil and gas, the very purpose
for which it was sold and purchased, and
consequently, such Lease had no value. Unless
we assume the School Land Board would know-
ingly lease a worthless tract not subject to
development, the situation arose from a mutual
mistake of fact. In any event, the rights
purported to be granted by the Lease were not
subject to realization at the time the Lease
was sold or at any time during its term.
Cabot Corporation, therefore, makes the fore-
going claim for refund." (Emphasis added.)

As clearly set out above in the Cabot affidavit, it is
clearly shown that Cabot Corporation had no knowledge that the
bombing range covered the acreage that it had leased, and it
logically follows that had Cabot realized that the acreage in
question could never be used for oil and gas purposes, then the
acreage would have never been leased from the State.

Article 5411a, Section 1(b), passed in 1945, was a pre-
existing law at the time of the dated mineral lease, and pos-
session of said lease could not be and was not delivered to
Cabot Corporation, who acted in good faith and complied with
the terms of the five year lease. Coupled with the certified
Application of Claim by Cabot Corporation, the verification of
claim by the General Land Office of Texas and the appropriation
by the Legislature (S.B. 11, Ch. 1047, 62nd Leg., 1971, R.S.)
of funds to pay this claim, it is our opinion that payment of
said claim may be made promptly, pursuant to Article 5411a,
Section 1(b). The previous ruling by this office, dated April
27, 1971, is accordingly overruled.

## SUMMARY

Where a mineral lease was entered into between
the State and a lessee and by virtue of federal
military activities, the lessee was prevented from
drilling thereunder and title or possession could
not pass because of such federal activity, but
the lessee in good faith complied with the terms
of the lease, paying the State the bonuses, delay
rentals and special sales fees, and Article 5411a,
Section 1(b), V.C.S., was a pre-existing law in
effect at the time of the lease, the lessee's claim

for refund of such payments to the State may be lawfully paid by the State to the lessee when coupled with the verification of the claim by the General Land Office and the legislative appropriation to pay such claim.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Jerry H. Roberts
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman
Linward Shivers
John Reeves
James Broadhurst
Marietta Payne
David Longoria

SAM McDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant